**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Centrust Bank, N.A., | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. |
| | ) | |
| v. | ) | Hon. |
| | ) | |
| Mark W. Allen and Denise A. Campbell, | ) | Hon. |
| | ) | |
| *Defendants*. | ) | |

## COMPLAINT

Plaintiff Centrust Bank ("Plaintiff"), by and through its attorneys, Brotschul Potts LLC, for its Complaint against Defendant Mark W. Allen ("Allen") and Defendant Denise A. Campbell ("Campbell") (collectively, "Defendants"), states:

## INTRODUCTION

1.      In 2017, Computer Power Systems, LLC ("CPS") borrowed $3,330,000 from Plaintiff (the "Loan Amount") pursuant to a written agreement (the "Note").  At approximately the same time, Defendant Allen and Defendant Campbell each entered into an Unconditional Guarantee whereby each of them, individually, guaranteed the repayment of the Loan Amount.

2.      CPS breached the Note by failing to repay the amount, with interest, it had borrowed.  Despite Plaintiff's requests for payment, Defendants have knowingly and intentionally breached their respective Unconditional Guarantees.  Accordingly, Plaintiff brings this action against Defendants for the principal and interest due and owing under the Note, as well as its attorneys' fees and costs.

## THE PARTIES

3.  Plaintiff is a banking institution located in Northbrook, Illinois.

4.  Defendant Wells is an individual who resides in Bernardsville, New Jersey.

5.  Defendant Campbell is an individual who resides in Bernardsville, New Jersey.

## JURISDICTION AND VENUE

6.  This Court has diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.

7.  The amount in controversy, without interest and costs, exceeds the sum or value specified in 28 U.S.C. § 1332.

8.  Venue is proper in this District because a substantial part of the events giving rise to this action occurred in this judicial district.  28 U.S.C. §1391(b)(2).

## GENERAL ALLEGATIONS

### CPS Enters Into The Note

9.  On or about February 23, 2017, CPS entered into a U.S Small Business Administration Note with Plaintiff whereby, in return for a loan, it agreed to pay Plaintiff $3,330,000.00, plus interest and other amounts (the "Note").

10.  Defendant Allen executed the Note on behalf of CPS.

11.  A true and accurate copy of the Note is attached hereto as Exhibit A.

12.  Plaintiff fully performed under the Note in all respects.

### CPS Enters Into The Loan Agreement

13.  On or about February 23, 2017, CPS entered into a Loan Agreement,  relating to the loan in the principal amount of $3,330,000.00 (the "Loan Agreement"), with Plaintiff.

14.  Defendant Allen executed the Loan Agreement on behalf of CPS.

15.  A true and accurate copy of the Loan Agreement is attached hereto as Exhibit B.

16.     Plaintiff fully performed under the Loan Agreement in all respects.

**CPS Enters Into The Security Agreement**

17.     On or about February 23, 2017, CPS entered into a Security Agreement (the "Security Agreement") with Plaintiff.

18.     Defendant Allen executed the Security Agreement on behalf of CPS.

19.     A true and accurate copy of the Security Agreement is attached hereto as Exhibit C.

20.     Plaintiff fully performed under the Security Agreement in all respects.

**Defendant Allen Enters Into The Allen Unconditional Guarantee**

21.     On or about February 23, 2017, Defendant Allen entered into a U.S. Small Business Administration Unconditional Guarantee (the "Allen Unconditional Guarantee") with Plaintiff.

22.     Defendant Allen executed the Allen Unconditional Guarantee on his own behalf.

23.     A true and accurate copy of the Allen Unconditional Guarantee attached hereto as Exhibit D.

24.     Plaintiff fully performed under the Allen Unconditional Guarantee in all respects.

**Defendant Campbell Enters Into The Campbell Unconditional Guarantee**

25.     On or about February 23, 2017, Defendant Campbell entered into a U.S. Small Business Administration Unconditional Guarantee (the "Campbell Unconditional Guarantee") with Plaintiff.

26.     Defendant Campbell executed the Campbell Unconditional Guarantee on her own behalf.

27.     A true and accurate copy of the Campbell Unconditional Guarantee attached hereto as Exhibit E.

28.     Plaintiff fully performed under the Campbell Unconditional Guarantee in all respects.

**Defendants Enter Into The First Mortgage**

29.     On or about February 23, 2017, Defendant Allen and Defendant Campbell entered into a Mortgage, Assignment Of Rents, Security Agreement And Fixture Filing (the "First Mortgage") with Plaintiff.

30.     Defendant Allen executed the First Mortgage on his behalf.

31.     Defendant Campbell executed the First Mortgage on her behalf.

32.     A true and accurate copy of the First Mortgage attached hereto as Exhibit F.

33.     Plaintiff fully performed under the First Mortgage in all respects.

**Defendants Enter Into The Second Mortgage**

34.     On or about November 17, 2017, Defendant Allen and Defendant Campbell entered into a Mortgage, Assignment Of Rents, Security Agreement And Fixture Filing (the "Second Mortgage") with Plaintiff.

35.     Defendant Allen executed the Second Mortgage on his behalf.

36.     Defendant Campbell executed the Second Mortgage on her behalf.

37.     A true and accurate copy of the Second Mortgage attached hereto as Exhibit G.

38.     Plaintiff fully performed under the Second Mortgage in all respects.

**Defendants Enter Into The Third Mortgage**

39.     On or about July 27, 2019, Defendant Allen and Defendant Campbell entered into a Mortgage, Assignment Of Rents, Security Agreement And Fixture Filing (the "Third Mortgage").

40.     Defendant Allen executed the Third Mortgage on his behalf.

41.     Defendant Campbell executed the Third Mortgage on her behalf.

42.     A true and accurate copy of the Third Mortgage attached hereto as Exhibit H.

43.     Plaintiff fully performed under the Third Mortgage in all respects.

**The Defendants Breach Their Respective Unconditional Guarantees**

44.     CPS has failed to make payments to Plaintiff due and owing under the Note and the Loan Agreement.

45.     Defendant Allen has failed to make payments to Plaintiff due and owing under the Allen Unconditional Guarantee.

46.     Defendant Campbell has failed to make payments to Plaintiff due and owing under the Allen Unconditional Guarantee.

47.     Despite Plaintiff's liquidation of collateral, CPS and the Defendants continue to owe money to Plaintiff.

**Defendants Refuse To Perform Despite Plaintiff's Repeated Demands**

48.     On February 10, 2023, Plaintiff sent a letter to Defendant Allen (the "First Demand Letter"): (a) advising him that an event of default had occurred; and (b) demanding payment of the outstanding amount.

49.     A true and accurate copy of the First Demand Letter is attached hereto as Exhibit I.

50.     In response, Defendant Allen made no payment, whatsoever, to Plaintiff.

51.     On April 5, 2023, Plaintiff's counsel sent a letter to Defendant Allen, Defendant Campbell, and CPS (the "Second Demand Letter"): (a) advising them that an event of default had occurred; and (b) demanding payment of the outstanding amount.

52.     A true and accurate copy of the Second Demand Letter is attached hereto as Exhibit J.

53.     In response, Defendant Allen, Defendant Campbell, and CPS made no payment, whatsoever, to Plaintiff.

54.     On April 10, 2024, Plaintiff's counsel sent a letter to Defendant Allen (the "Third Demand Letter") demanding payment, as required by the Allen Unconditional Guarantee, of the outstanding amount owed to Plaintiff.

55.     A true and accurate copy of the Third Demand Letter is attached hereto as Exhibit K.

56.     In response, Defendant Allen made no payment, whatsoever, to Plaintiff.

57.     On April 10, 2024, Plaintiff's counsel sent a letter to Defendant Campbell (the "Fourth Demand Letter") demanding payment, as required by the Campbell Unconditional Guarantee, of the outstanding amount owed to Plaintiff.

58.     A true and accurate copy of the Fourth Demand Letter is attached hereto as Exhibit L.

59.     In response, Defendant Campbell made no payment, whatsoever, to Plaintiff.

**Count I**
**Breach of Allen Unconditional Guarantee**
**<u>Against Defendant Allen</u>**

60.     Plaintiff incorporates the allegations of paragraphs 1 through 59 of this complaint as though fully set forth herein.

61.     The Allen Unconditional Guaranty is a valid and enforceable contract between Plaintiff and Defendant Allen.

62.     Plaintiff has fulfilled all of its obligations under the Allen Unconditional Guaranty.

63.     Defendant Allen breached the Allen Unconditional Guaranty by failing to make payments due and owing thereunder.

64.     As a direct result of Defendant Allen's breach of the Allen Unconditional Guaranty, Plaintiff has been damaged in the amount of not less than $1,396,071.58, plus other amounts continuing to accrue daily since April 1, 2024, including but not limited to Plaintiff's attorneys' fees and costs.

65.     Defendant Allen is therefore liable to Plaintiff in the amount of not less than $1,396,071.58, plus other amounts continuing to accrue daily since April 1, 2024, including but not limited to Plaintiff's attorneys' fees and costs.

WHEREFORE, Plaintiff Centrust Bank, N.A. respectfully requests that the Court enter judgment in its favor and against Defendant Allen for not less than $1,396,071.58, plus other amounts continuing to accrue daily since April 1, 2024, including but not limited to Plaintiff's attorneys' fees and costs, and for any other relief the court deems appropriate and just.

### Count II
### Breach Of Campbell Unconditional Guaranty
### Against Defendant Campbell

66.     Plaintiff incorporates the allegations of paragraphs 1 through 59 of this complaint as though fully set forth herein.

67.     The Campbell Unconditional Guaranty is a valid and enforceable contract between Plaintiff and Defendant Allen.

68.     Plaintiff has fulfilled all of its obligations under the Campbell Unconditional Guaranty.

69.     Defendant Campbell breached the Campbell Unconditional Guaranty by failing to make payments due and owing thereunder.

70.     As a direct result of Defendant Campbell's breach of the Allen Unconditional Guaranty, Plaintiff has been damaged in the amount of not less than $1,396,071.58, plus other

amounts continuing to accrue daily since April 1, 2024, including but not limited to Plaintiff's attorneys' fees and costs.

71. Defendant Campbell is therefore liable to Plaintiff in the amount of not less than $1,396,071.58, plus other amounts continuing to accrue daily since April 1, 2024, including but not limited to Plaintiff's attorneys' fees and costs.

WHEREFORE, Plaintiff Centrust Bank, N.A. respectfully requests that the Court enter judgment in its favor and against Defendant Campbell for not less than $1,396,071.58, plus other amounts continuing to accrue daily since April 1, 2024, including but not limited to Plaintiff's attorneys' fees and costs, and for any other relief the court deems appropriate and just.

Dated: June 24, 2024          _/s/ Richard L. Miller II_____
                                       Counsel for Plaintiff

J. Ryan Potts
ryan@brotschulpotts.com
Richard L. Miller II
rmiller@brotschulpotts.com
BROTSCHUL POTTS, LLC
One Tower Lane, Suite 2060
Oakbrook Terrace, Illinois 60181
P: 312-551-9003
F: 312-277-3278

# Exhibit A



U.S. Small Business Administration

NOTE

"The guaranteed portion of the outstanding principal balance of this note has been transferred to a Registered Holder for value."

_[signature]_ 5/8/2017

| SBA Loan # | 91853950-10 |
|---|---|
| SBA Loan Name | Computer Power Systems, LLC |
| Date | 2-23 , 2017 |
| Loan Amount | $3,330,000.00 |
| Interest Rate | WSJ Prime Rate plus 2.75%, adjusted every calendar quarter |
| Borrower | Computer Power Systems, LLC, a Delaware limited liability company |
| Operating Company | |
| Lender | CenTrust Bank, National Association |

1. PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of

Three Million Three Hundred Thirty Thousand and 00/100 ($3,330,000.00) Dollars,

interest on the unpaid principal balance, and all other amounts required by this Note.

2. DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

3. PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

This Note will mature in 10 years and 6 months from date of Note.

The interest rate on this Note will fluctuate. The initial interest rate is 6.25% per year. This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus 2.75%. The initial interest rate must remain in effect until the first change period begins unless reduced in accordance with SOP 50 10.

Borrower must make a total of 6 payments of interest only on the disbursed principal balance beginning one month from the month this Note is dated and every month thereafter; payments must be made on the ___ / 15 calendar day in the months they are due.

Borrower must pay principal and interest payments of $37,389.27 every month, beginning seven months from the month this Note is dated; payments must be made on the ___ / 15 calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every calendar quarter (the "change period").

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the Wall Street Journal newspaper) in which SBA received the application, or any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.75% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The spread as identified in the Note may not be changed during the life of the Loan without the written agreement of the Borrower.

For variable rate loans, the interest rate adjustment period may not be changed without the written consent of the Borrower.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

Loan Prepayment. Notwithstanding any provision in this Note to the contrary: Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must: a. Give Lender written notice; b. Pay all accrued interest; and c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above. If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 10 years and 6 months from date of Note.

Late Charge: If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00%of the unpaid portion of the regularly scheduled payment.

The initial interest rate will adjust on April 1, 2017

3.   PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

This Note will mature in 10 years and 6 months from date of Note.

The interest rate on this Note will fluctuate. The initial interest rate is 6.25% per year. This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus 2.75%. The initial interest rate must remain in effect until the first change period begins unless reduced in accordance with SOP 50 10.

Borrower must make a total of 6 payments of interest only on the disbursed principal balance beginning one month from the month this Note is dated and every month thereafter; payments must be made on the _____1_____ calendar day in the months they are due.

Borrower must pay principal and interest payments of $37,389.27 every month, beginning seven months from the month this Note is dated; payments must be made on the _____1_____ calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every calendar quarter (the "change period").

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the Wall Street Journal newspaper) in which SBA received the application, or any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.75% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The spread as identified in the Note may not be changed during the life of the Loan without the written agreement of the Borrower.

For variable rate loans, the interest rate adjustment period may not be changed without the written consent of the Borrower.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

Loan Prepayment. Notwithstanding any provision in this Note to the contrary: Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must: a. Give Lender written notice; b. Pay all accrued interest; and c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above. If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 10 years and 6 months from date of Note.

Late Charge: If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

4.   DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A.   Fails to do anything required by this Note and other Loan Documents;

B.   Defaults on any other loan with Lender;

C.   Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D.   Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E.   Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F.   Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G.   Fails to pay any taxes when due;

H.   Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I.   Has a receiver or liquidator appointed for any part of their business or property;

J.   Makes an assignment for the benefit of creditors;

K.   Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L.   Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M.   Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5.   LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A.   Require immediate payment of all amounts owing under this Note;

B.   Collect all amounts owing from any Borrower or Guarantor;

C.   File suit and obtain judgment;

D.   Take possession of any Collateral; or

E.   Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6.   LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A.   Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B.   Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral.  Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs.  If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C.   Release anyone obligated to pay this Note;

D.   Compromise, release, renew, extend or substitute any of the Collateral; and

E.   Take any action necessary to protect the Collateral or collect amounts owing on this Note.

SBA Form 147 (06/03/02) Version 4.1

7. WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

   A. All individuals and entities signing this Note are jointly and severally liable.
   B. Borrower waives all suretyship defenses.
   C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.
   D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.
   E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.
   F. If any part of this Note is unenforceable, all other parts remain in effect.
   G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

SBA Form 147 (06/03/02) Version 4.1

10. STATE-SPECIFIC PROVISIONS:

None.

SBA Form 147 (06/03/02) Version 4.1

11. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

Computer Power Systems, LLC,
a Delaware limited liability company

By: _____

Name: Mark Allen
Its: Manager

# Exhibit B

# LOAN AGREEMENT

THIS LOAN AGREEMENT ("Agreement") is made between **COMPUTER POWER SYSTEMS, LLC**, a Delaware limited liability company ("Borrower") and **CENTRUST BANK, NATIONAL ASSOCIATION** (the "Lender") identified in the attached Authorization issued by the U.S. Small Business Administration ("SBA") to Lender, dated December 27, 2016, SBA Loan Number 91853950-10 ("Authorization").

SBA has authorized a guaranty of a loan from Lender to Borrower for the amount and under the terms stated in the attached Authorization (the "Loan").

In consideration of the promises in this Agreement and for other good and valuable consideration, Borrower and Lender agree as follows:

1.  Subject to the terms and conditions of the Authorization and SBA's Participating Lender Rules as defined in the Guarantee Agreement between Lender and SBA, Lender agrees to make the Loan if Borrower complies with the following "Borrower Requirements." Borrower must:

    a.  Provide Lender with all certifications, documents or other information Lender is required by the Authorization to obtain from Borrower or any third party;

    b.  Execute a note and any other documents required by Lender; and

    c.  Do everything necessary for Lender to comply with the terms and conditions of the Authorization.

2.  The terms and conditions of this Agreement:

    a.  Are binding on Borrower and Lender and their successors and assigns; and

    b.  Will remain in effect after the closing of the Loan.

3.  Failure to abide by any of the Borrower Requirements will constitute an event of default under the note and other loan documents.

*Remainder of page left blank intentionally – signature page to follow.*

2836903.1.25560.59509

Borrower:

**COMPUTER POWER SYSTEMS, LLC,**
a Delaware limited liability company

By: _____          Date: __2_/_23_/2017
      Mark W. Allen, its Manager

Lender:

**CENTRUST BANK, NATIONAL ASSOCIATION**

By: _____          Date: __2_/_23_/2017
    Name: _____Thomas Meyer_____
    Its: _____SVP_____

2836903.1.25560.59509

# Exhibit C



U.S. Small Business Administration

## SECURITY AGREEMENT

| | |
|---|---|
| SBA Loan # | 91853950-10 |
| SBA Loan Name | Computer Power Systems, LLC |
| Debtor<br>*(Exact full legal name of individual(s), corporation, LLC, partnership, or other organization)* | Computer Power Systems, LLC, a Delaware limited liability company |
| Borrower | Computer Power Systems, LLC, a Delaware limited liability company |
| Secured Party | CenTrust Bank, National Association |
| Date | 2-23 , 2017 |
| Note Amount | $3,330,000.00 |

1.  DEFINITIONS.

    Unless otherwise specified, all terms used in this Agreement will have the meanings ascribed to them under the Official Text of the Uniform Commercial Code, as it may be amended from time to time, ("UCC"). "SBA" means the Small Business Administration, an Agency of the U.S. Government.

2.  GRANT OF SECURITY INTEREST.

    For value received, the Debtor grants to the Secured Party a security interest in the property described below in paragraph 4 (the "Collateral").

3.  OBLIGATIONS SECURED.

    This Agreement secures the payment and performance of: (a) all obligations under a Note dated 2-23 , 2017, made

By _____ Computer Power Systems, LLC, a Delaware limited liability company _____ _____ __ ____, made payable to_____ CenTrust Bank, National Association _____, in the amount of $ 3,330,000.00 _____ ("Note"), including all costs and expenses (including reasonable attorney's fees), incurred by the Secured Party in the disbursement, administration and collection of the loan evidenced by the Note; (b) all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the protection, maintenance and enforcement of the security interest hereby granted; (c) all obligations of the Debtor in any other agreement relating to the Note; and (d) any modifications, renewals, refinancings, or extensions of the foregoing obligations. The Note and all other obligations secured hereby are collectively called the "Obligations."

4.   COLLATERAL DESCRIPTION.

The Collateral in which this security interest is granted is all of the Debtor's property described below, and indicated by an "X" or other mark on the applicable line, now owned or hereafter acquired, together with all replacements, accessions, proceeds, and products.

| | | | |
|---|---|---|---|
| ☒ | a. Equipment | ☒ | f. Chattel paper |
| ☒ | b. Fixtures | ☒ | g. General intangibles |
| ☒ | c. Inventory | ☐ | h. Documents |
| ☒ | d. Accounts | ☐ | i. Farm products |
| ☒ | e. Instruments | ☐ | j. Deposit accounts |
| | | ☐ | k. Investment property |

☐   l.   Titled motor vehicles, including mobile or manufactured homes (list make, model, and serial #):

_____

_____

☐   m.   Other:  Insert specific description of other forms of Collateral not included in categories a through k above (for example, specific commercial tort claim, letter-of-credit rights):

_____

_____

5.   RESTRICTIONS ON COLLATERAL TRANSFER.

Debtor will not sell, lease, license or otherwise transfer (including by granting security interests, liens, or other encumbrances in) all or any part of the Collateral or Debtor's interest in the Collateral without Secured Party's written or electronically communicated approval, except that Debtor may sell inventory in the ordinary course of business on customary terms. Debtor may collect and use amounts due on accounts and other rights to payment arising or created in the ordinary course of business, until notified otherwise by Secured Party in writing or by electronic communication.

6. MAINTENANCE AND LOCATION OF COLLATERAL; INSPECTION; INSURANCE.

Debtor must promptly notify Secured Party by written or electronic communication of any change in location of the Collateral, specifying the new location. Debtor hereby grants to Secured Party the right to inspect the Collateral at all reasonable times and upon reasonable notice. Debtor must: (a) maintain the Collateral in good condition; (b) pay promptly all taxes, judgments, or charges of any kind levied or assessed thereon; (c) keep current all rent or mortgage payments due, if any, on premises where the Collateral is located; and (d) maintain hazard insurance on the Collateral, with an insurance company and in an amount approved by Secured Party (but in no event less than the replacement cost of that Collateral), and including such terms as Secured Party may require including a Lender's Loss Payable Clause in favor of Secured Party. Debtor hereby assigns to Secured Party any proceeds of such policies and all unearned premiums thereon and authorizes and empowers Secured Party to collect such sums and to execute and endorse in Debtor's name all proofs of loss, drafts, checks and any other documents necessary for Secured Party to obtain such payments.

7. CHANGES TO DEBTOR'S LEGAL STRUCTURE, PLACE OF BUSINESS, JURISDICTION OF ORGANIZATION, OR NAME.

Debtor must notify Secured Party by written or electronic communication not less than 30 days before taking any of the following actions: (a) changing or reorganizing the type of organization or form under which it does business; (b) moving, changing its place of business or adding a place of business; (c) changing its jurisdiction of organization; or (d) changing its name. Debtor will pay for the preparation and filing of all documents, Secured Party deems necessary to maintain, perfect and continue the perfection of Secured Party's security interest in the event of any such change.

8. PERFECTION OF SECURITY INTEREST.

Debtor consents, without further notice, to Secured Party's filing or recording of any documents necessary to perfect, continue, amend or terminate its security interest. Upon request of Secured Party, Debtor must sign or otherwise authenticate all documents that Secured Party deems necessary at any time to allow Secured Party to acquire, perfect, continue or amend its security interest in the Collateral. Debtor will pay the filing and recording costs of any documents relating to Secured Party's security interest. Debtor ratifies all previous filings and recordings, including financing statements and notations on certificates of title. Debtor will cooperate with Secured Party in obtaining a Control Agreement satisfactory to Secured Party with respect to any Deposit Accounts or Investment Property, or in otherwise obtaining control or possession of that or any other Collateral.

9. DEFAULT.

Debtor is in default under this Agreement if: (a) Debtor fails to pay, perform or otherwise comply with any provision of this Agreement; (b) Debtor makes any materially false representation, warranty or certification in, or in connection with, this Agreement, the Note, or any other agreement related to the Note or this Agreement; (c) another secured party or judgment creditor exercises its rights against the Collateral; or (d) an event defined as a "default" under the Obligations occurs. In the event of default and if Secured Party requests, Debtor must assemble and make available all Collateral at a place and time designated by Secured Party. Upon default and at any time thereafter, Secured Party may declare all Obligations secured hereby immediately due and payable, and, in its sole discretion, may proceed to enforce payment of same and exercise any of the rights and remedies available to a secured party by law including those available to it under Article 9 of the UCC that is in effect in the jurisdiction where Debtor or the Collateral is located. Unless otherwise required under applicable law, Secured Party has no obligation to clean or otherwise prepare the Collateral for sale or other disposition and Debtor waives any right it may have to require Secured Party to enforce the security interest or payment or performance of the Obligations against any other person.

10. FEDERAL RIGHTS.

When SBA is the holder of the Note, this Agreement will be construed and enforced under federal law, including SBA regulations. Secured Party or SBA may use state or local procedures for filing papers, recording documents, giving notice, enforcing security interests or liens, and for any other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax or liability. As to this Agreement, Debtor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

11. GOVERNING LAW.

Unless SBA is the holder of the Note, in which case federal law will govern, Debtor and Secured Party agree that this Agreement will be governed by the laws of the jurisdiction where the Debtor is located, including the UCC as in effect in such jurisdiction and without reference to its conflicts of laws principles.

12. Secured party rights.

All rights conferred in this Agreement on Secured Party are in addition to those granted to it by law, and all rights are cumulative and may be exercised simultaneously. Failure of Secured Party to enforce any rights or remedies will not constitute an estoppel or waiver of Secured Party's ability to exercise such rights or remedies. Unless otherwise required under applicable law, Secured Party is not liable for any loss or damage to Collateral in its possession or under its control, nor will such loss or damage reduce or discharge the Obligations that are due, even if Secured Party's actions or inactions caused or in any way contributed to such loss or damage.

13. SEVERABILITY.

If any provision of this Agreement is unenforceable, all other provisions remain in effect.

14. DEBTOR CERTIFICATIONS.

Debtor certifies that: (a) its Name (or Names) as stated above is correct; (b) all Collateral is owned or titled in the Debtor's name and not in the name of any other organization or individual; (c) Debtor has the legal authority t o grant the security interest in the Collateral; (d) Debtor's ownership in or title to the Collateral is free of all adverse claims, liens, or security interests (unless expressly permitted by Secured Party); (e) none of the Obligations are or will be primarily for personal, family or household purposes; (f) none of the Collateral is or will be used, or has been or will be bought primarily for personal, family or household purposes; and (g) Debtor has read and understands the meaning and effect of all terms of this Agreement.

15. DEBTOR NAME(S) AND SIGNATURE(S).

By signing or otherwise authenticating below, each individual and each organization becomes jointly and severally obligated as a Debtor under this Agreement.

Computer Power Systems, LLC,
a Delaware limited liability company

By: _____
Name: Mark W. Allen
Its: Manager

Exhibit D



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | 91853950-10 |
|---|---|
| SBA Loan Name | Computer Power Systems, LLC |
| Guarantor | Mark W. Allen, an individual |
| Borrower | Computer Power Systems, LLC, a Delaware limited liability company |
| Lender | CenTrust Bank, National Association |
| Date | *2-23*, 2017 |
| Note Amount | $3,330,000.00 |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated *2-23*, 2017 in the principal amount of Three Million Three Hundred Thirty Thousand and 00/100 ($3,330,000.00) Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:
   1) Require presentment, protest, or demand upon Borrower;
   2) Redeem any Collateral before or after Lender disposes of it;
   3) Have any disposition of Collateral advertised; and
   4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:
   1) Any default under the Note;
   2) Presentment, dishonor, protest, or demand;
   3) Execution of the Note;
   4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5) Any change in the financial condition or business operations of Borrower or any guarantor;
   6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:
   1) Lender failed to obtain any guarantee;
   2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3) Lender or others improperly valued or inspected the Collateral;
   4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;
6) Lender did not dispose of any of the Collateral;
7) Lender did not conduct a commercially reasonable sale;
8) Lender did not obtain the fair market value of the Collateral;
9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) Lender made errors or omissions in Loan Documents or administration of the Loan;
12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:
13) Lender impaired Guarantor's suretyship rights;
14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
15) Borrower has avoided liability on the Note; or
16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. **DUTIES AS TO COLLATERAL:**

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. **SUCCESSORS AND ASSIGNS:**

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. **GENERAL PROVISIONS:**

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10.  STATE-SPECIFIC PROVISIONS:

None.

11.  GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12.  GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.



MARK W. ALLEN, individually

# Exhibit E



### U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | 91853950-10 |
|---|---|
| SBA Loan Name | Computer Power Systems, LLC |
| Guarantor | Denise A. Campbell, an individual |
| Borrower | Computer Power Systems, LLC, a Delaware limited liability company |
| Lender | CenTrust Bank, National Association |
| Date | 2-23 , 2017 |
| Note Amount | $3,330,000.00 |

1.  GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.  NOTE:

The "Note" is the promissory note dated _____ 2-23 _____, 2017 _____ in the principal amount of _____ Three Million Three Hundred Thirty Thousand and 00/100 ($3,330,000.00) _____ Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.  DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4.  LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.  Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.  Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.  Release any Borrower or any guarantor of the Note;

D.  Compromise or settle with the Borrower or any guarantor of the Note;

E.  Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.  Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.  Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.  Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.  FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.  RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.  Guarantor waives all rights to:
    1)  Require presentment, protest, or demand upon Borrower;
    2)  Redeem any Collateral before or after Lender disposes of it;
    3)  Have any disposition of Collateral advertised; and
    4)  Require a valuation of Collateral before or after Lender disposes of it.

B.  Guarantor waives any notice of:
    1)  Any default under the Note;
    2)  Presentment, dishonor, protest, or demand;
    3)  Execution of the Note;
    4)  Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
    5)  Any change in the financial condition or business operations of Borrower or any guarantor;
    6)  Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
    7)  The time or place of any sale or other disposition of Collateral.

C.  Guarantor waives defenses based upon any claim that:
    1)  Lender failed to obtain any guarantee;
    2)  Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
    3)  Lender or others improperly valued or inspected the Collateral;
    4)  The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;
6) Lender did not dispose of any of the Collateral;
7) Lender did not conduct a commercially reasonable sale;
8) Lender did not obtain the fair market value of the Collateral;
9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) Lender made errors or omissions in Loan Documents or administration of the Loan;
12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:
13) Lender impaired Guarantor's suretyship rights;
14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
15) Borrower has avoided liability on the Note; or
16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. **DUTIES AS TO COLLATERAL:**

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. **SUCCESSORS AND ASSIGNS:**

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. **GENERAL PROVISIONS:**

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.
B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.
C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.
D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.
E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.
F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.
G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.
H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.
I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.
J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

None.

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

*Denise A. Campbell*
DENISE A. CAMPBELL, individually

# Exhibit F

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

CenTrust Bank, National Association
385 Waukegan Road
Northbrook, Illinois 60062
Attention: Tom Meyer

THIS DOCUMENT PREPARED BY:

Chuhak & Tecson, P.C.
30 S. Wacker Dr., Ste. 2600
Chicago, Illinois 60606
Attention: Evan D. Blewett

Image# 056072180024 Type: MTG
Recorded: 03/13/2017 at 11:02:50 AM
Receipt#: 2017-00014952
Page 1 of 24
Fees: $59.00
IL Rental Housing Fund: $9.00
Lake County IL Recorder
Mary Ellen Vanderventer Recorder
File 7379038

_____
Space above this line for Recorder's Use

## MORTGAGE, ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

This Mortgage, Assignment of Rents, Security Agreement and Fixture Filing, dated as of **2-23**_____, 2017, is given by Mark Allen and Denise A. Campbell,, husband and wife (collectively, "Mortgagor"), to CenTrust Bank, National Association, as mortgagee ("Mortgagee" or "Lender").

1. GRANT.

    1.1  The Property.  For the purpose of securing payment and performance of the Secured Obligations defined in Section 2 below, Mortgagor hereby irrevocably and unconditionally grants, conveys, transfers and assigns to Mortgagee, upon the statutory mortgage condition for breach of which this Mortgage is subject to foreclosure as provided by law, with mortgage covenants and right of entry and possession, all estate, right, title and interest which Mortgagor now has or may later acquire in the following property (all or any part of such property, or any interest in all or any part of it, together with the Personalty (as hereinafter defined) being hereinafter collectively referred to as the "Property"):

    (a)  The real property located in the County of Lake, State of Illinois, as described in **Exhibit A** hereto, and commonly known as 845 Maplewood Road, Lake Forest, Illinois 60045 (the "Land");

    (b)  All buildings, structures, improvements, fixtures and appurtenances now or hereafter placed on the Land, and all apparatus and equipment now or hereafter attached in any manner to the Land or any building on the Land, including all pumping plants, engines, pipes, ditches and flumes, and also all gas, electric, cooking, heating,

-1-

cooling, air conditioning, lighting, refrigeration and plumbing fixtures and equipment (collectively, the "Improvements");

(c) All easements and rights of way appurtenant to the Land; all crops growing or to be grown on the Land (including all such crops following severance from the Land); all standing timber upon the Land (including all such timber following severance from the Land); all development rights or credits and air rights; all water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant to the Land) and shares of stock pertaining to such water or water rights, ownership of which affect the Land; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Land;

(d) All existing and future leases, subleases, subtenancies, licenses, occupancy agreements and concessions relating to the use and enjoyment of all or any part of the Land or the Improvements, and any and all guaranties and other agreements relating to or made in connection with any of the foregoing;

(e) All proceeds, including all claims to and demands for them, of the voluntary or involuntary conversion of any of the Land, Improvements, or the other property described above into cash or liquidated claims, including proceeds of all present and future fire, hazard or casualty insurance policies, whether or not such policies are required by Mortgagee, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Land, Improvements, or the other property described above or any part of them; and

(f) All proceeds of, additions and accretions to, substitutions and replacements for, and changes in any of the property described above.

1.2   Fixture Filing.  This Mortgage constitutes a financing statement filed as a fixture filing under the Illinois Uniform Commercial Code, as amended or recodified from time to time, covering any Property which now is or later may become a fixture attached to the Land or any building located thereon.

## 2. THE SECURED OBLIGATIONS.

2.1   Purpose of Securing.  Mortgagor makes the grant, conveyance, transfer and assignment set forth in Section 1, makes the irrevocable and absolute assignment set forth in Section 3, and grants the security interest set forth in Section 4, all for the purpose of securing the following obligations (the "Secured Obligations") in any order of priority that Mortgagee may choose:

(a)   Payment of all obligations of Mortgagor and Computer Power Systems, LLC, a Delaware limited liability company ("Borrower" or "Obligor") to

-2-

Mortgagee arising under an U.S. Small Business Administration Note dated as of _2-23_ _____, 2017, payable by Borrower, as maker, in the stated principal amount of Three Million Three Hundred Thirty Thousand and 00/100 Dollars ($3,330,000.00) to the order of Mortgagee, the terms of which are incorporated herein by reference ("Debt Instrument"). This Mortgage also secures payment of all obligations of Borrower under the Debt Instrument which arise after the Debt Instrument is extended, renewed, modified or amended pursuant to any written agreement between Borrower and Mortgagee, and all obligations of Borrower under any successor agreement or instrument which restates and supersedes the Debt Instrument in its entirety;

　　　　　(b)　Payment and performance of all obligations of Mortgagor under this Mortgage;

　　　　　(c)　Payment and performance of all future advances and other obligations that Mortgagor (or any successor in interest to Mortgagor) or Borrower (if different from Mortgagor) may agree to pay and/or perform (whether as principal, surety or guarantor) to or for the benefit of Mortgagee, when a writing signed by Mortgagor (or any successor in interest to Mortgagor) evidences said parties' agreement that such advance or obligation be secured by this Mortgage.

　　　This Mortgage does not secure any obligation which expressly states that it is unsecured, whether contained in the foregoing Debt Instrument or in any other document, agreement or instrument. Unless specifically described in subparagraph (a) above or otherwise agreed in writing, "Secured Obligations" shall not include any debts, obligations or liabilities which are or may hereafter be "consumer credit" subject to the disclosure requirements of the Federal Truth in Lending law or any regulation promulgated thereunder.

　　　Notwithstanding any provision to the contrary, "Secured Obligations" secured hereby shall not include obligations arising under any Swap Contract to the extent that the grant of a lien hereunder to secure such Swap Contract would violate the Commodity Exchange Act by virtue of the Mortgagor's failure to constitute an "eligible contract participant" as defined in the Commodity Exchange Act at the time such grant of such lien becomes effective with respect to such Swap Contract. "Commodity Exchange Act" means 7 U.S.C. Section 1 *et seq.,* as amended from time to time, any successor statute, and any rules, regulations and orders applicable thereto.

　　　2.2　Terms of Secured Obligations. All persons who may have or acquire an interest in all or any part of the Property will be considered to have notice of, and will be bound by, the terms of the Debt Instrument described in Paragraph 2.1(a) and each other agreement or instrument made or entered into in connection with each of the Secured Obligations. These terms include any provisions in the Debt Instrument which permit borrowing, repayment and reborrowing, or which provide that the interest rate on one or more of the Secured Obligations may vary from time to time.

　　　2.3　Maximum Amount Secured. The maximum amount secured by the lien of this Mortgage is $6,660,000.00.

-3-

3. <u>ASSIGNMENT OF RENTS</u>.

3.1     <u>Assignment</u>.   Mortgagor hereby irrevocably, absolutely, presently and unconditionally assigns to Mortgagee all rents, royalties, issues, profits, revenue, income and proceeds of the Property, whether now due, past due or to become due, including all prepaid rents and security deposits (collectively, the "Rents"), and confers upon Mortgagee the right to collect such Rents with or without taking possession of the Property. In the event that anyone establishes and exercises any right to develop, bore for or mine for any water, gas, oil or mineral on or under the surface of the Property, any sums that may become due and payable to Mortgagor as bonus or royalty payments, and any damages or other compensation payable to Mortgagor in connection with the exercise of any such rights, shall also be considered Rents assigned under this Paragraph.   <u>THIS IS AN ABSOLUTE ASSIGNMENT, NOT AN ASSIGNMENT FOR SECURITY ONLY.</u>

3.2     <u>Grant of License</u>.   Notwithstanding the provisions of Paragraph 3.1, Mortgagee hereby confers upon Mortgagor a license ("License") to collect and retain the Rents as they become due and payable, so long as no Event of Default, as defined in Paragraph 6.2, shall exist and be continuing. If an Event of Default has occurred and is continuing, Mortgagee shall have the right, which it may choose to exercise in its sole discretion, to terminate this License without notice to or demand upon Mortgagor, and without regard to the adequacy of the security for the Secured Obligations.

4. <u>SECURITY INTEREST IN RELATED PERSONALTY</u>.

4.1 <u>Grant of Security Interest</u>. Mortgagor grants to Mortgagee a security interest in, and pledges and assigns to Mortgagee, all of Mortgagor's right, title and interest, whether presently existing or hereafter acquired in and to all of the following property (collectively, the "Personalty"):

(a)   All materials, supplies, goods, tools, furniture, fixtures, equipment, and machinery which in all cases is affixed or attached, or to be affixed or attached, in any manner on the Land or the Improvements;

(b)   All crops growing or to be grown on the Land (and after severance from the Land); all standing timber upon the Land (and after severance from the Land); all sewer, water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant to the Land) and all evidence of ownership rights pertaining to such water or water rights, ownership of which affect the Land; and all architectural and engineering plans, specifications and drawings which arise from or relate to the Land or the Improvements;

(c)   All permits, licenses and claims to or demands for the voluntary or involuntary conversion of any of the Land, Improvements, or other Property into cash or liquidated claims, proceeds of all present and future fire, hazard or casualty insurance policies relating to the Land and the Improvements, whether or not such policies are required by Mortgagee, and all condemnation awards or payments now or later to be

-4-

made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Land, Improvements, or other Property or any part of them;

(d) All substitutions, replacements, additions, and accessions to any of the above property, and all books, records and files relating to any of the above property, including, without limitation, all general intangibles related to any of the above property and all proceeds of the above property.

## 5. RIGHTS AND DUTIES OF THE PARTIES.

5.1 Representations and Warranties. Mortgagor represents and warrants that Mortgagor lawfully possesses and holds fee simple title to all of the Land and the Improvements, unless Mortgagor's present interest in the Land and the Improvements is described in Exhibit A as a leasehold interest, in which case Mortgagor lawfully possesses and holds a leasehold interest in the Land and the Improvements as stated in Exhibit A.

5.2 Taxes, Assessments, Liens and Encumbrances. Mortgagor shall pay prior to delinquency all taxes, levies, charges and assessments, including assessments on appurtenant water stock, imposed by any public or quasi-public authority or utility company which are (or if not paid, may become) a lien on all or part of the Property or any interest in it, or which may cause any decrease in the value of the Property or any part of it. Mortgagor shall immediately discharge any lien on the Property which Mortgagee has not consented to in writing, and shall also pay when due each obligation secured by or reducible to a lien, charge or encumbrance which now or hereafter encumbers or appears to encumber all or part of the Property, whether the lien, charge or encumbrance is or would be senior or subordinate to this Mortgage.

5.3 Damages and Insurance and Condemnation Proceeds.

(a) Mortgagor hereby absolutely and irrevocably assigns to Mortgagee, and authorizes the payor to pay to Mortgagee, the following claims, causes of action, awards, payments and rights to payment (collectively, the "Claims"):

(i) all awards of damages and all other compensation payable directly or indirectly because of a condemnation, proposed condemnation or taking for public or private use which affects all or part of the Property or any interest in it;

(ii) all other awards, claims and causes of action, arising out of any breach of warranty or misrepresentation affecting all or any part of the Property, or for damage or injury to, or defect in, or decrease in value of all or part of the Property or any interest in it;

(iii) all proceeds of any insurance policies payable because of loss sustained to all or part of the Property, whether or not such insurance policies are required by Mortgagee; and

-5-

(iv) all interest which may accrue on any of the foregoing.

(b) Mortgagor shall immediately notify Mortgagee in writing if:

(i) any damage occurs or any injury or loss is sustained to all or part of the Property, or any action or proceeding relating to any such damage, injury or loss is commenced; or

(ii) any offer is made, or any action or proceeding is commenced, which relates to any actual or proposed condemnation or taking of all or part of the Property.

If Mortgagee chooses to do so, it may in its own name appear in or prosecute any action or proceeding to enforce any cause of action based on breach of warranty or misrepresentation, or for damage or injury to, defect in, or decrease in value of all or part of the Property, and it may make any compromise or settlement of the action or proceeding. Mortgagee, if it so chooses, may participate in any action or proceeding relating to condemnation or taking of all or part of the Property, and may join Mortgagor in adjusting any loss covered by insurance.

(c) All proceeds of the Claims assigned to Mortgagee under this Paragraph shall be paid to Mortgagee. In each instance, Mortgagee shall apply those proceeds first toward reimbursement of all of Mortgagee's costs and expenses of recovering the proceeds, including attorneys' fees. Mortgagor further authorizes Mortgagee, at Mortgagee's option and in Mortgagee's sole discretion, and regardless of whether there is any impairment of the Property, (i) to apply the balance of such proceeds, or any portion of them, to pay or prepay some or all of the Secured Obligations in such order or proportion as Mortgagee may determine, or (ii) to hold the balance of such proceeds, or any portion of them, in an interest-bearing account to be used for the cost of reconstruction, repair or alteration of the Property, or (iii) to release the balance of such proceeds, or any portion of them, to Mortgagor. If any proceeds are released to Mortgagor, Mortgagee shall not be obligated to see to, approve or supervise the proper application of such proceeds. If the proceeds are held by Mortgagee to be used to reimburse Mortgagor for the costs of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition, or such other condition as Mortgagee may approve in writing. Mortgagee may, at Mortgagee's option, condition disbursement of the proceeds on Mortgagee's approval of such plans and specifications prepared by an architect satisfactory to Mortgagee, contractor's cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and materialmen, and such other evidence of costs, percentage of completion of construction, application of payments, and satisfaction of liens as Mortgagee may reasonably require.

5.4 Insurance. Mortgagor shall provide and maintain in force at all times all risk property damage insurance (including without limitation windstorm coverage, and hurricane coverage as applicable) on the Property and such other type of insurance on the Property as may

-6-

be required by Mortgagee in its reasonable judgment. At Mortgagee's request, Mortgagor shall provide Mortgagee with a counterpart original of any policy, together with a certificate of insurance setting forth the coverage, the limits of liability, the carrier, the policy number and the expiration date. Each such policy of insurance shall be in an amount, for a term, and in form and content satisfactory to Mortgagee, and shall be written only by companies approved by Mortgagee. In addition, each policy of hazard insurance shall include a Form 438BFU or equivalent loss payable endorsement in favor of Mortgagee. Unless Mortgagor provides evidence of the insurance coverage required by this Paragraph, Mortgagee may purchase insurance at Mortgagor's expense to protect Mortgagee's interest in the Property. This insurance may but need not, protect Mortgagor's interests. The coverage that Mortgagee purchases may not pay any claim that Mortgagor makes or any claim that is made against Mortgagor in connection with the Property. Mortgagor may later cancel any insurance purchased by Mortgagee, but only after providing evidence that Mortgagor has obtained insurance as required by this Paragraph. If Mortgagee purchases insurance for the Property, Mortgagor will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges Mortgagee may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to outstanding principal balance of the Secured Obligations. The costs of the insurance may be more than the cost of insurance Mortgagor may be able to obtain on its own.

5.5 <u>Maintenance and Preservation of Property</u>.

(a) Mortgagor shall keep the Property in good condition and repair and shall not commit or allow waste of the Property. Mortgagor shall not remove or demolish the Property or any part of it, or alter, restore or add to the Property, or initiate or allow any change in any zoning or other land use classification which affects the Property or any part of it, except with Mortgagee's express prior written consent in each instance.

(b) If all or part of the Property becomes damaged or destroyed, Mortgagor shall promptly and completely repair and/or restore the Property in a good and workmanlike manner in accordance with sound building practices, regardless of whether or not Mortgagee agrees to disburse insurance proceeds or other sums to pay costs of the work of repair or reconstruction under Paragraph 5.3.

(c) Mortgagor shall not commit or allow any act upon or use of the Property which would violate any applicable law or order of any governmental authority, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property. Mortgagor shall not bring or keep any article on the Property or cause or allow any condition to exist on it, if that could invalidate or would be prohibited by any insurance coverage required to be maintained by Mortgagor on the Property or any part of it under this Mortgage.

(d) If Mortgagor's interest in the Property is a leasehold interest, Mortgagor shall observe and perform all obligations of Mortgagor under any lease or

-7-

leases and shall refrain from taking any actions prohibited by any lease or leases. Mortgagor shall preserve and protect the leasehold estate and its value.

(e)  If the Property is agricultural, Mortgagor shall farm the Property in a good and husbandlike manner.  Mortgagor shall keep all trees, vines and crops on the Property properly cultivated, irrigated, fertilized, sprayed and fumigated, and shall replace all dead or unproductive trees or vines with new ones.  Mortgagor shall prepare for harvest, harvest, remove and sell any crops growing on the Property.  Mortgagor shall keep all buildings, fences, ditches, canals, wells and other farming improvements on the Property in first class condition, order and repair.

(f)  Mortgagor shall perform all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value.

5.6  Releases, Extensions, Modifications and Additional Security.  Without affecting the personal liability of any person, including Mortgagor (or Borrower, if different from Mortgagor), for the payment of the Secured Obligations or the lien of this Mortgage on the remainder of the Property for the unpaid amount of the Secured Obligations, Mortgagee may from time to time and without notice:

(a)  release any person liable for payment of any Secured Obligation;

(b)  extend the time for payment, or otherwise alter the terms of payment, of any Secured Obligation;

(c)  accept additional real or personal property of any kind as security for any Secured Obligation, whether evidenced by deeds of trust, mortgages, security agreements or any other instruments of security;

(d)  alter, substitute or release any property securing the Secured Obligations;

(e)  consent to the making of any plat or map of the Property or any part of it;

(f)  join in granting any easement or creating any restriction affecting the Property;

(g)  join in any subordination or other agreement affecting this Mortgage or the lien of it; or

(h)  release the Property or any part of it from the lien of this Mortgage.

5.7  Release.  When all of the Secured Obligations have been paid in full and no further commitment to extend credit continues, Mortgagee shall release the Property, or so much of it as is then held under this Mortgage, from the lien of this Mortgage.

-8-

5.8  Compensation and Reimbursement of Costs and Expenses.

(a)  Mortgagor agrees to pay fees in the maximum amounts legally permitted, or reasonable fees as may be charged by Mortgagee when the law provides no maximum limit, for any services that Mortgagee may render in connection with this Mortgage, including Mortgagee's providing a statement of the Secured Obligations. Mortgagor shall also pay or reimburse all of Mortgagee's costs and expenses which may be incurred in rendering any such services.

(b)  Mortgagor further agrees to pay or reimburse Mortgagee for all costs, expenses and other advances which may be incurred or made by Mortgagee to protect or preserve the Property or to enforce any terms of this Mortgage, including the exercise of any rights or remedies afforded to Mortgagee under Paragraph 6.3, whether any lawsuit is filed or not, or in defending any action or proceeding arising under or relating to this Mortgage, including attorneys' fees and other legal costs, costs of any sale of the Property and any cost of evidence of title.

(c)  Mortgagor shall pay all obligations arising under this Paragraph immediately upon demand by Mortgagee. Each such obligation shall be added to, and considered to be part of, the principal of the Secured Obligations, and shall bear interest from the date the obligation arises at the rate provided in any instrument or agreement evidencing the Secured Obligations.  If more than one rate of interest is applicable to the Secured Obligations, the highest rate shall be used for purposes hereof.

5.9  Exculpation and Indemnification.

(a)  Mortgagee shall not be directly or indirectly liable to Mortgagor or any other person as a consequence of any of the following:

(i)  Mortgagee's exercise of or failure to exercise any rights, remedies or powers granted to it in this Mortgage;

(ii)  Mortgagee's failure or refusal to perform or discharge any obligation or liability of Mortgagor under any agreement related to the Property or under this Mortgage;

(iii)  Mortgagee's failure to produce Rents from the Property or to perform any of the obligations of the lessor under any lease covering the Property;

(iv)  any waste committed by lessees of the Property or any other parties, or any dangerous or defective condition of the Property; or

(v)  any loss sustained by Mortgagor or any third party resulting from any act or omission of Mortgagee in operating or managing the Property

upon exercise of the rights or remedies afforded Mortgagee under Paragraph 6.3, unless the loss is caused by the willful misconduct and bad faith of Mortgagee.

Mortgagor hereby expressly waives and releases all liability of the types described above, and agrees that no such liability shall be asserted against or imposed upon Mortgagee.

(b)     Mortgagor agrees to indemnify Mortgagee against and hold Mortgagee harmless from all losses, damages, liabilities, claims, causes of action, judgments, court costs, attorneys' fees and other legal expenses, cost of evidence of title, cost of evidence of value, and other costs and expenses which Mortgagee may suffer or incur in performing any act required or permitted by this Mortgage or by law or because of any failure of Mortgagor to perform any of its obligations. This agreement by Mortgagor to indemnify Mortgagee shall survive the release and cancellation of any or all of the Secured Obligations and the full or partial release of this Mortgage.

5.10   Defense and Notice of Claims and Actions.   At Mortgagor's sole expense, Mortgagor shall protect, preserve and defend the Property and title to and right of possession of the Property, and the security of this Mortgage and the rights and powers of Mortgagee created under it, against all adverse claims. Mortgagor shall give Mortgagee prompt notice in writing if any claim is asserted which does or could affect any of these matters, or if any action or proceeding is commenced which alleges or relates to any such claim.

5.11   Representation and Warranty Regarding Hazardous Substances.   Before signing this Mortgage, Mortgagor researched and inquired into the previous uses and ownership of the Property. Based on that due diligence, Mortgagor represents and warrants that to the best of its knowledge, no hazardous substance has been disposed of or released or otherwise exists in, on, under or onto the Property, except as Mortgagor has disclosed to Mortgagee in writing. Mortgagor further represents and warrants that Mortgagor has complied, and will comply and cause all occupants of the Property to comply, with all current and future laws, regulations and ordinances or other requirements of any governmental authority relating to or imposing liability or standards of conduct concerning protection of health or the environment or hazardous substances ("Environmental Laws"). Mortgagor shall promptly, at Mortgagor's sole cost and expense, take all reasonable actions with respect to any hazardous substances or other environmental condition at, on, or under the Property necessary to (i) comply with all applicable Environmental Laws; (ii) allow continued use, occupation or operation of the Property; or (iii) maintain the fair market value of the Property. Mortgagee acknowledges that hazardous substances may permanently and materially impair the value and use of the Property. "Hazardous substance" means any substance, material or waste that is or becomes designated or regulated as "toxic," "hazardous," "pollutant," or "contaminant" or a similar designation or regulation under any current or future federal, state or local law (whether under common law, statute, regulation or otherwise) or judicial or administrative interpretation of such, including without limitation petroleum or natural gas.

5.12   Site Visits, Observation and Testing.   Mortgagee and its agents and representatives shall have the right at any reasonable time, after giving reasonable notice to Mortgagor, to enter and visit the Property for the purposes of performing appraisals, observing

-10-

the Property, taking and removing environmental samples, and conducting tests on any part of the Property. Mortgagor shall reimburse Mortgagee on demand for the costs of any such environmental investigation and testing. Mortgagee will make reasonable efforts during any site visit, observation or testing conducted pursuant this Paragraph to avoid interfering with Mortgagor's use of the Property. Mortgagee is under no duty, however, to visit or observe the Property or to conduct tests, and any such acts by Mortgagee will be solely for the purposes of protecting Mortgagee's security and preserving Mortgagee's rights under this Mortgage. No site visit, observation or testing or any report or findings made as a result thereof ("Environmental Report") (i) will result in a waiver of any default of Mortgagor; (ii) impose any liability on Mortgagee; or (iii) be a representation or warranty of any kind regarding the Property (including its condition or value or compliance with any laws) or the Environmental Report (including its accuracy or completeness). In the event Mortgagee has a duty or obligation under applicable laws, regulations or other requirements to disclose an Environmental Report to Mortgagor or any other party, Mortgagor authorizes Mortgagee to make such a disclosure. Mortgagee may also disclose an Environmental Report to any regulatory authority, and to any other parties as necessary or appropriate in Mortgagee's judgment. Mortgagor further understands and agrees that any Environmental Report or other information regarding a site visit, observation or testing that is disclosed to Mortgagor by Mortgagee or its agents and representatives is to be evaluated (including any reporting or other disclosure obligations of Mortgagor) by Mortgagor without advice or assistance from Mortgagee.

5.13 <u>Intentionally Deleted</u>.

6. <u>ACCELERATING TRANSFERS, DEFAULT AND REMEDIES</u>.

6.1 <u>Accelerating Transfers</u>

(a) "Accelerating Transfer" means any sale, contract to sell, conveyance, encumbrance, or other transfer, whether voluntary, involuntary, by operation of law or otherwise, of all or any material part of the Property or any interest in it, including any transfer or exercise of any right to drill for or to extract any water (other than for Mortgagor's own use), oil, gas or other hydrocarbon substances or any mineral of any kind on or under the surface of the Property. If Mortgagor is a corporation, "Accelerating Transfer" also means any transfer or transfers of shares possessing, in the aggregate, more than fifty percent (50%) of the voting power. If Mortgagor is a partnership, "Accelerating Transfer" also means withdrawal or removal of any general partner, dissolution of the partnership under applicable law, or any transfer or transfers of, in the aggregate, more than fifty percent (50%) of the partnership interests. If Mortgagor is a limited liability company, "Accelerating Transfer" also means withdrawal or removal of any managing member, termination of the limited liability company or any transfer or transfers of, in the aggregate, more than fifty percent (50%) of the voting power or in the aggregate more than fifty percent of the ownership of the economic interest in the Mortgagor.

(b) Mortgagor agrees that Mortgagor shall not make any Accelerating Transfer, unless the transfer is preceded by Mortgagee's express written consent to the

particular transaction and transferee. Mortgagee may withhold such consent in its sole discretion. If any Accelerating Transfer occurs, Mortgagee in its sole discretion may declare all of the Secured Obligations to be immediately due and payable, and Mortgagee may invoke any rights and remedies provided by Paragraph 6.3 of this Mortgage.

6.2 <u>Events of Default</u>. The occurrence of any one or more of the following events, at the option of Mortgagee, shall constitute an event of default ("Event of Default") under this Mortgage:

(a) Borrower fails to make any payment, when due, under the Debt Instrument (after giving effect to any applicable grace period), or any other default occurs under and as defined in the Debt Instrument or in any other instrument or agreement evidencing any of the Secured Obligations and such default continues beyond any applicable cure period;

(b) Mortgagor fails to make any payment or perform any obligation which arises under this Mortgage;

(c) Mortgagor makes or permits the occurrence of an Accelerating Transfer in violation of Paragraph 6.1;

(d) Any representation or warranty made in connection with this Mortgage or the Secured Obligations proves to have been false or misleading in any material respect when made;

(e) Any default occurs under any other mortgage on all or any part of the Property, or under any obligation secured by such mortgage, whether such mortgage is prior to or subordinate to this Mortgage; or

(f) An event occurs which gives Mortgagee the right or option to terminate any Swap Contract secured by this Mortgage.

6.3 <u>Remedies</u>. At any time after the occurrence of an Event of Default, Mortgagee shall be entitled to invoke any and all of the rights and remedies described below, as well as any other rights and remedies authorized by law. All of such rights and remedies shall be cumulative, and the exercise of any one or more of them shall not constitute an election of remedies.

(a) Mortgagee may declare any or all of the Secured Obligations to be due and payable immediately, and may terminate any Swap Contract secured by this Mortgage in accordance with its terms.

(b) Mortgagee may apply to any court of competent jurisdiction for, and obtain appointment of, a receiver for the Property.

(c)  Mortgagee, in person, by agent or by court-appointed receiver, may enter, take possession of, manage and operate all or any part of the Property, and in its own name or in the name of Mortgagor sue for or otherwise collect any and all Rents, including those that are past due, and may also do any and all other things in connection with those actions that Mortgagee may in its sole discretion consider necessary and appropriate to protect the security of this Mortgage.  Such other things may include: entering into, enforcing, modifying, or canceling leases on such terms and conditions as Mortgagee may consider proper; obtaining and evicting tenants; fixing or modifying Rents; completing any unfinished construction; contracting for and making repairs and alterations; performing such acts of cultivation or irrigation as necessary to conserve the value of the Property; and preparing for harvest, harvesting and selling any crops that may be growing on the property.  Mortgagor hereby irrevocably constitutes and appoints Mortgagee as its attorney-in-fact to perform such acts and execute such documents as Mortgagee in its sole discretion may consider to be appropriate in connection with taking these measures, including endorsement of Mortgagor's name on any instruments. Mortgagor agrees to deliver to Mortgagee all books and records pertaining to the Property, including computer-readable memory and any computer hardware or software necessary to access or process such memory, as may reasonably be requested by Mortgagee in order to enable Mortgagee to exercise its rights under this Paragraph.

(d)  Mortgagee may cure any breach or default of Mortgagor, and if it chooses to do so in connection with any such cure, Mortgagee may also enter the Property and/or do any and all other things which it may in its sole discretion consider necessary and appropriate to protect the security of this Mortgage.  Such other things may include: appearing in and/or defending any action or proceeding which purports to affect the security of, or the rights or powers of Mortgagee under, this Mortgage; paying, purchasing, contesting or compromising any encumbrance, charge, lien or claim of lien which in Mortgagee's sole judgment is or may be senior in priority to this Mortgage, such judgment of Mortgagee to be conclusive as among the parties to this Mortgage; obtaining insurance and/or paying any premiums or charges for insurance required to be carried under this Mortgage; otherwise caring for and protecting any and all of the Property; and/or employing counsel, accountants, contractors and other appropriate persons to assist Mortgagee.  Mortgagee may take any of the actions permitted hereunder either with or without giving notice to any person.

(e)  Mortgagee may bring an action in any court of competent jurisdiction to foreclose this instrument or to obtain specific enforcement of any of the covenants or agreements of this Mortgage.

(f)  Mortgagee may exercise the remedies contained in the Debt Instrument or in any other instrument or agreement evidencing any of the Secured Obligations.

(g)  Mortgagee may proceed under the Uniform Commercial Code as to all or any part of the Personalty, and in conjunction therewith may exercise all of the rights, remedies and powers of a secured creditor under the Uniform Commercial Code.  When

-13-

all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Mortgagee may sell the Personalty at a public sale to be held at the time and place specified in the notice of sale. It shall be deemed commercially reasonable for the Mortgagee to dispose of the Personalty without giving any warranties as to the Personalty and specifically disclaiming all disposition warranties.

(h)   If any provision of this Mortgage is inconsistent with any applicable provision of the Illinois Mortgage Foreclosure Law, Illinois Compiled Statutes Chapter 735, Section 5/15-1101 et seq. (the "Illinois Act"), the provisions of the Illinois Act shall take precedence over the provisions of this Mortgage, but shall not invalidate or render unenforceable any other provision of this Mortgage that can fairly be construed in a manner consistent with the Illinois Act.

(i)   Without in any way limiting or restricting any of the Mortgagee's rights, remedies, powers and authorities under this Mortgage, and in addition to all of such rights, remedies, powers, and authorities, the Mortgagee shall also have and may exercise any and all rights, remedies, powers and authorities which the holder of a mortgage is permitted to have or exercise under the provisions of the Illinois Act, as the same may be amended from time to time. If any provision of this Mortgage shall grant to the Mortgagee any rights, remedies, powers or authorities upon default of Mortgagor which are more limited than the rights that would otherwise be vested in the Mortgagee under the Illinois Act in the absence of said provision, the Mortgagee shall be vested with all of the rights, remedies, powers and authorities granted in the Illinois Act to the fullest extent permitted by law.

(j)   Without limiting the generality of the foregoing, all expenses incurred by the Mortgagee, to the extent reimbursable, under Sections 5/15-1510, 5/15-1512, or any other provision of the Illinois Act, whether incurred before or after any decree or judgment of foreclosure, and whether or not enumerated in any other provision of this Mortgage, shall be added to the indebtedness secured by this Mortgage and by the judgment of foreclosure.

(k)   Mortgagor waives, to the extent permitted by law, (a) the benefit of all laws now existing or that may hereafter be enacted providing for any appraisement before sale of any portion of the Property, (b) all rights of reinstatement, redemption, valuation, appraisement, homestead, moratorium, exemption, extension, stay of execution, notice of election to mature or declare due the whole of the Secured Obligations in the event of foreclosure of the liens hereby created, (c) all rights and remedies which Mortgagor may have or be able to assert by reason of the laws of the State of Illinois pertaining to the rights and remedies of sureties, (d) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Mortgage or to any action brought to enforce the Debt Instrument or any other Secured Obligations, and (e) any rights, legal or equitable, to require marshaling of assets or to require foreclosure sales in a particular order. Without limiting the generality of the preceding sentence, Mortgagor, on its own behalf and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date of this Mortgage, hereby irrevocably waives any and all rights of reinstatement or redemption from sale or from or under any order, judgment or decree of

foreclosure of this Mortgage or under any power contained herein or under any sale pursuant to any statute, order, decree or judgment of any court. Mortgagor, for itself and for all persons hereafter claiming through or under it or who may at any time hereafter become holders of liens junior to the lien of this Mortgage, hereby expressly waives and releases all rights to direct the order in which any of the Property shall be sold in the event of any sale or sales pursuant hereto and to have any of the Property and/or any other property now or hereafter constituting security for any of the indebtedness secured hereby marshaled upon any foreclosure of this Mortgage or of any other security for any of said indebtedness. The Mortgagee shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. The Mortgagee shall have the right to determine the order in which any or all portions of the Secured Obligations are satisfied from the proceeds realized upon the exercise of the remedies provided herein.

6.4 <u>Application of Sale Proceeds and Rents</u>.

(a) Mortgagee shall apply the proceeds of any sale of the Property in the following manner: first, to pay the portion of the Secured Obligations attributable to the costs, fees and expenses of the sale, including costs of evidence of title in connection with the sale; and, second, to pay all other Secured Obligations in any order and proportions as Mortgagee in its sole discretion may choose. The remainder, if any, shall be remitted to the person or persons entitled thereto.

(b) Mortgagee shall apply any and all Rents collected by it, and any and all sums other than proceeds of any sale of the Property which Mortgagee may receive or collect under Paragraph 6.3, in the following manner: first, to pay the portion of the Secured Obligations attributable to the costs and expenses of operation and collection that may be incurred by Mortgagee or any receiver; and, second, to pay all other Secured Obligations in any order and proportions as Mortgagee in its sole discretion may choose. The remainder, if any, shall be remitted to the person or persons entitled thereto. Mortgagee shall have no liability for any funds which it does not actually receive.

7. <u>MISCELLANEOUS PROVISIONS</u>

7.1 <u>No Waiver or Cure</u>.

(a) Each waiver by Mortgagee must be in writing, and no waiver shall be construed as a continuing waiver. No waiver shall be implied from any delay or failure by Mortgagee to take action on account of any default of Mortgagor. Consent by Mortgagee to any act or omission by Mortgagor shall not be construed as a consent to any other or subsequent act or omission or to waive the requirement for Mortgagee's consent to be obtained in any future or other instance.

(b) If any of the events described below occurs, that event alone shall not cure or waive any breach, Event of Default or notice of default under this Mortgage or invalidate any act performed pursuant to any such default or notice; or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid

and performed); or impair the security of this Mortgage; or prejudice Mortgagee or any receiver in the exercise of any right or remedy afforded any of them under this Mortgage; or be construed as an affirmation by Mortgagee of any tenancy, lease or option, or a subordination of the lien of this Mortgage:

        (i) Mortgagee, its agent or a receiver takes possession of all or any part of the Property;

        (ii) Mortgagee collects and applies Rents, either with or without taking possession of all or any part of the Property;

        (iii) Mortgagee receives and applies to any Secured Obligation proceeds of any Property, including any proceeds of insurance policies, condemnation awards, or other claims, property or rights assigned to Mortgagee under this Mortgage;

        (iv) Mortgagee makes a site visit, observes the Property and/or conducts tests thereon;

        (v) Mortgagee receives any sums under this Mortgage or any proceeds of any collateral held for any of the Secured Obligations, and applies them to one or more Secured Obligations;

        (vi) Mortgagee or any receiver performs any act which it is empowered or authorized to perform under this Mortgage or invokes any right or remedy provided under this Mortgage.

7.2 <u>Powers of Mortgagee</u>. Mortgagee may take any of the actions permitted under Paragraphs 6.3(b) and/or 6.3(c) regardless of the adequacy of the security for the Secured Obligations, or whether any or all of the Secured Obligations have been declared to be immediately due and payable, or whether notice of default and election to sell has been given under this Mortgage.

7.3 <u>Nonborrower Mortgagor</u>.

        (a) If any Mortgagor ("Nonborrower Mortgagor") is not the Borrower under the Debt Instrument described in Paragraph 2.1(a), such Nonborrower Mortgagor authorizes Mortgagee to perform any of the following acts at any time, all without notice to Nonborrower Mortgagor and without affecting Mortgagee's rights or Nonborrower Mortgagor's obligations under this Mortgage:

        (i) Mortgagee may alter any terms of the Debt Instrument or any part of it, including renewing, compromising, extending or accelerating, or otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the Debt Instrument or any part of it;

        (ii)  Mortgagee may take and hold security for the Debt Instrument, accept additional or substituted security for the Debt Instrument, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect, sell or otherwise dispose of any such security;

        (iii)  Mortgagee may apply any security now or later held for the Debt Instrument in any order that Mortgagee in its sole discretion may choose, and may direct the order and manner of any sale of all or any part of it and bid at any such sale;

        (iv)  Mortgagee may release Borrower of its liability for the Debt Instrument or any part of it;

        (v)  Mortgagee may substitute, add or release any one or more guarantors or endorsers of the Debt Instrument; and

        (vi)  Mortgagee may extend other credit to Borrower, and may take and hold security for the credit so extended, whether or not such security also secures the Debt Instrument.

    (b)  Nonborrower Mortgagor waives:

        (i)  Any right it may have to require Mortgagee to proceed against Borrower, proceed against or exhaust any security held from Borrower, or pursue any other remedy in Mortgagee's power to pursue;

        (ii)  Any defense based on any legal disability of Borrower, any discharge or limitation of the liability of Borrower to Mortgagee, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor-relief proceeding, or from any other cause, or any claim that Nonborrower Mortgagor's obligations exceed or are more burdensome than those of Borrower;

        (iii)  All presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Mortgage and of the existence, creation, or incurring of new or additional indebtedness of Borrower, and demands and notices of every kind;

        (iv)  Any defense based on or arising out of any defense that Borrower may have to the payment or performance of the Debt Instrument or any part of it; and

        (v)  Until the Secured Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute,

all rights to enforce any remedy that the Mortgagee may have against Borrower, and all rights to participate in any security now or later to be held by Mortgagee for the Debt Instrument.

(c)     Nonborrower Mortgagor assumes full responsibility for keeping informed of Borrower's financial condition and business operations and all other circumstances affecting Borrower's ability to pay and perform its obligations to Mortgagee, and agrees that Mortgagee shall have no duty to disclose to Nonborrower Mortgagor any information which Mortgagee may receive about Borrower's financial condition, business operations, or any other circumstances bearing on its ability to perform.

(d)  No provision or waiver in this Mortgage shall be construed as limiting the generality of any other provision or waiver contained in this Mortgage.

(e)     For purposes of this Paragraph 7.3, all references to the Debt Instrument shall also include any instrument or agreement executed by Borrower subsequent to the date of this Mortgage which is secured by this Mortgage in accordance with the provisions of Paragraphs 2.1(c) and 2.1(d).

7.4  Merger.  No merger shall occur as a result of Mortgagee's acquiring any other estate in or any other lien on the Property unless Mortgagee consents to a merger in writing.

7.5  Joint and Several Liability.  If Mortgagor consists of more than one person, each shall be jointly and severally liable for the faithful performance of all of Mortgagor's obligations under this Mortgage.

7.6  Applicable Law.  This Mortgage shall be governed by the laws of the State of Illinois.

7.7  Successors in Interest.  The terms, covenants and conditions of this Mortgage shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties. However, this Paragraph does not waive the provisions of Paragraph 6.1.

7.8  **SERVICE OF PROCESS**.  **THE MORTGAGOR WAIVES PERSONAL SERVICE OF PROCESS UPON THE MORTGAGOR, AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO THE MORTGAGOR AT THE ADDRESS STATED ON THE SIGNATURE PAGE HEREOF AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.**

7.9  **Waiver of Jury Trial**.  **EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS MORTGAGE OR ANY OTHER DOCUMENT EXECUTED IN**

CONNECTION HEREWITH OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). MORTGAGOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST MORTGAGEE OR ANY OTHER PERSON INDEMNIFIED UNDER THIS MORTGAGE ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES. EACH PARTY HERETO (a) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (b) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS MORTGAGE AND THE OTHER DOCUMENTS CONTEMPLATED HEREBY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION AND (c) CERTIFIES THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE.

7.10    Interpretation.  Whenever the context requires, all words used in the singular will be construed to have been used in the plural, and vice versa, and each gender will include any other gender. The captions of the sections of this Mortgage are for convenience only and do not define or limit any terms or provisions. The word "include(s)" means "include(s), without limitation," and the word "including" means "including, but not limited to." The word "obligations" is used in its broadest and most comprehensive sense, and includes all primary, secondary, direct, indirect, fixed and contingent obligations. It further includes all principal, interest, prepayment charges, late charges, loan fees and any other fees and charges accruing or assessed at any time, as well as all obligations to perform acts or satisfy conditions. No listing of specific instances, items or matters in any way limits the scope or generality of any language of this Mortgage. The Exhibits to this Mortgage are hereby incorporated in this Mortgage.

7.11    In-House Counsel Fees.  Whenever Mortgagor is obligated to pay or reimburse Mortgagee for any attorneys' fees, those fees shall include the allocated costs for services of in-house counsel to the extent permitted by applicable law.

7.12    Waiver of Marshaling.  Mortgagor waives all rights, legal and equitable, it may now or hereafter have to require marshaling of assets or to direct the order in which any of the Property will be sold in the event of any sale under this Mortgage. Each successor and assign of Mortgagor, including any holder of a lien subordinate to this Mortgage, by acceptance of its interest or lien agrees that it shall be bound by the above waiver, as if it had given the waiver itself.

7.13    Waiver of Homestead.  Mortgagor hereby abandons and waives all claims of homestead on the Property and does hereby forever release and discharge the Property from any and all claims of homestead.

7.14    Severability.  If any provision of this Mortgage should be held unenforceable or void, that provision shall be deemed severable from the remaining provisions and in no way affect the validity of this Mortgage except that if such provision relates to the

payment of any monetary sum, then Mortgagee may, at its option, declare all Secured Obligations immediately due and payable.

7.15 <u>Notices</u>. Mortgagor hereby requests that a copy of notice of default and notice of sale be mailed to it at the address set forth below. That address is also the mailing address of Mortgagor as debtor under the Uniform Commercial Code. Mortgagee's address given below is the address for Mortgagee as secured party under the Uniform Commercial Code.

Addresses for Notices to Mortgagor:

Mark Allen
Denise A. Campbell
845 Maplewood Road
Lake Forest, Illinois 60045

Address for Notices to Mortgagee:

CenTrust Bank, National Association
385 Waukegan Road
Northbrook, Illinois 60062
Attention: Tom Meyer

7.16 <u>Business Loan</u>. Mortgagor stipulates, represents, warrants, affirms and agrees that each of the loans and other obligations secured hereby constitute a "business loan" within the meaning of the Illinois Compiled Statutes, Chapter 815, Sections 205/4(a) or (c), as amended.

7.17 <u>No Property Manager Lien</u>. Any property management agreement for or relating to all or any part of the Property, whether now in effect or entered into hereafter by Mortgagor or on behalf of Mortgagor, shall contain a subordination provision whereby the property manager forever and unconditionally subordinates to the lien of this Mortgage any and all mechanic's lien rights and claims that it or anyone claiming through or under it may have at any time pursuant to any statute or law, including, without limitation, Illinois Compiled Statutes, Chapter 770, Section 60/1 ), as amended. Such property management agreement or a short form thereof, including such subordination, shall, at the Mortgagee's request, be recorded with the office of the recorder of deeds for the county in which the Property is located. Mortgagor's failure to cause any of the foregoing to occur shall constitute an Event of Default under this Mortgage.

7.18 <u>SBA Loan</u>. The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

(a) When SBA is the holder of the Debt Instruments, this document and all documents evidencing or securing the Loan will be construed in accordance with federal law.

(b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state

control, penalty, tax or liability. Neither the Borrower nor any guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

(c)     Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Debt Instruments secured by this instrument.

*Remainder of page left blank intentionally – signature page to follow.*

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage as of the date first above written.

MORTGAGOR:

_____
MARK ALLEN, individually

_____
DENISE A. CAMPBELL, individually

3066482.1.25560.61877

-22-

STATE OF _ILLINOIS_ )
                    ) SS.
COUNTY OF _COOK_ )

I, _Laura Guardado_ , a notary public in and for said County, in the State aforesaid, do hereby certify that Mark Allen, an individual, and Denise A. Campbell, an individual, and the same persons whose names re subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that they signed, sealed and delivered the said instrument as their free and voluntary act, and as the free and voluntary act of said entity, for the uses and purposes therein set forth.

Given under my hand and official seal this _23_ day of _FEBRUARY_, 2017.

_Laura Guardado_
Notary Public

Commission expires: _05-13-2017_

"OFFICIAL SEAL"
LAURA GUARDADO
NOTARY PUBLIC, STATE OF ILLINOIS
COOK COUNTY
MY COMMISSION EXPIRES 05-13-2017

3066482.1.25560.61877             -23-

## EXHIBIT A TO MORTGAGE

Exhibit A to MORTGAGE dated as of _____2-23_____, 2017 given by Mark Allen and Denise A. Campbell, husband and wife, as "Mortgagor", to CenTrust Bank, National Association, as "Mortgagee."

## Description of Property

LOT 4 IN FOREST PARK, BEING A SUBDIVISION OF PART OF LOT 254 AND LOT 257 IN THE CITY OF LAKE FOREST, IN THE SOUTHWEST 1/4 OF SECTION 34, TOWNSHIP 44 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JUNE 14, 1924 AS DOCUMENT 241368, IN BOOK "N" OF PLATS, PAGE 11, IN LAKE COUNTY, ILLINOIS.

Commonly known as:      845 Maplewood Road, Lake Forest, Illinois 60045

PIN #:                            12-34-305-0001

# Exhibit G

Bk 30910 Pg21 #59343
11-20-2017 @ 10:02a

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

CenTrust Bank, National Association
385 Waukegan Road
Northbrook, Illinois 60062
Attention: Tom Meyer

_____

Space above this line for Recorder's Use

## MORTGAGE, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Mortgage, dated as of ‾‾Nov 17, 2017‾‾, 2017, is given by Denise Ann Campbell and Mark W. Allen, husband and wife, as mortgagors (collectively, "Mortgagor"), to CenTrust Bank, National Association, as mortgagee ("Mortgagee").

1. GRANT.

1.1 The Property. For the purpose of securing payment and performance of the Secured Obligations defined in Section 2 below, Mortgagor hereby irrevocably and unconditionally grants, conveys, transfers and assigns to Mortgagee, with MORTGAGE COVENANTS, upon the STATUTORY CONDITION, and with the STATUTORY POWER OF SALE, all estate, right, title and interest which Mortgagor now has or may later acquire in the following property (all or any part of such property, or any interest in all or any part of it, together with the Personalty (as hereinafter defined) being hereinafter collectively referred to as the "Property"):

(a) The real property located in the County of Barnstable, Commonwealth of Massachusetts, as described in Exhibit A hereto (the "Land");

(b) All buildings, structures, improvements, fixtures and appurtenances now or hereafter placed on the Land, and all apparatus and equipment now or hereafter attached in any manner to the Land or any building on the Land, including all pumping plants, engines, pipes, ditches and flumes, and also all gas, electric, cooking, heating, cooling, air conditioning, lighting, refrigeration and plumbing fixtures and equipment (collectively, the "Improvements");

(c) All easements and rights of way appurtenant to the Land; all crops growing or to be grown on the Land (including all such crops following severance from the Land); all standing timber upon the Land (including all such timber following severance from the Land); all development rights or credits and air rights; all water and water rights (whether riparian, appropriative, or otherwise, and whether or not

4814-3056-1106.1.25560.63052                    -1-

appurtenant to the Land) and shares of stock pertaining to such water or water rights, ownership of which affect the Land; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Land;

(d)     All existing and future leases, subleases, subtenancies, licenses, occupancy agreements and concessions relating to the use and enjoyment of all or any part of the Land or the Improvements, and any and all guaranties and other agreements relating to or made in connection with any of the foregoing;

(e)     All proceeds, including all claims to and demands for them, of the voluntary or involuntary conversion of any of the Land, Improvements, or the other property described above into cash or liquidated claims, including proceeds of all present and future fire, hazard or casualty insurance policies, whether or not such policies are required by Mortgagee, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Land, Improvements, or the other property described above or any part of them; and

(f)     All proceeds of, additions and accretions to, substitutions and replacements for, and changes in any of the property described above.

1.2     <u>Fixture Filing</u>.  This Mortgage constitutes a financing statement filed as a fixture filing under the Massachusetts Uniform Commercial Code, as amended or recodified from time to time, covering any Property which now is or later may become a fixture attached to the Land or any building located thereon.

## 2.  <u>THE SECURED OBLIGATIONS</u>.

2.1     <u>Purpose of Securing</u>.  Mortgagor makes the grant, conveyance, transfer and assignment set forth in Section 1, makes the irrevocable and absolute assignment set forth in Section 3, and grants the security interest set forth in Section 4, all for the purpose of securing the following obligations (the "Secured Obligations") in any order of priority that Mortgagee may choose:

(a)     Payment of all obligations of Computer Power Systems, LLC, a Delaware limited liability company ("Obligor" or "Borrower") to Mortgagee arising under the following instrument(s) or agreement(s) (collectively, the "Debt Instrument"):

(i)     Payment of all obligations of Mortgagor and Computer Power Systems, LLC, a Delaware limited liability company ("Borrower" or "Obligor") to Mortgagee arising under an U.S. Small Business Administration Note dated as of February 23, 2017, payable by Borrower, as maker, in the stated principal amount of Three Million Three Hundred Thirty Thousand and 00/100 Dollars

($3,330,000.00) to the order of Mortgagee, the terms of which are incorporated herein by reference.

      (ii)  Payment of all obligations of Obligor and Mortgagor under that certain Loan Modification Agreement dated as of even date herewith, by and between, among others, Obligor, Mortgagor, and Mortgagee.

      This Mortgage also secures payment of all obligations of Borrower under the Debt Instrument which arise after the Debt Instrument is extended, renewed, modified or amended pursuant to any written agreement between Borrower and Mortgagee, and all obligations of Borrower under any successor agreement or instrument which restates and supersedes the Debt Instrument in its entirety

      (b)  Payment and performance of all obligations of Mortgagor under this Mortgage;

      (c)  Payment and performance of all obligations of Obligor under any Swap Contract with respect to which there is a writing evidencing the parties' agreement that said Swap Contract shall be secured by this Mortgage. "Swap Contract" means any document, instrument or agreement with Mortgagee, now existing or entered into in the future, relating to an interest rate swap transaction, forward rate transaction, interest rate cap, floor or collar transaction, any similar transaction, any option to enter into any of the foregoing, and any combination of the foregoing, which agreement may be oral or in writing, including, without limitation, any master agreement relating to or governing any or all of the foregoing and any related schedule or confirmation, each as amended from time to time; and

      (d)  Payment and performance of all future advances and other obligations under the Debt Instrument.

This Mortgage does not secure any obligation which expressly states that it is unsecured, whether contained in the foregoing Debt Instrument or in any other document, agreement or instrument. Unless specifically described in subparagraph (a) above, "Secured Obligations" shall not include any debts, obligations or liabilities which are or may hereafter be "consumer credit" subject to the disclosure requirements of the Federal Truth in Lending law or any regulation promulgated thereunder.

Notwithstanding any provision to the contrary, "Secured Obligations" secured hereby shall not include obligations arising under any Swap Contract to the extent that the grant of a lien hereunder to secure such Swap Contract would violate the Commodity Exchange Act by virtue of the Mortgagor's failure to constitute an "eligible contract participant" as defined in the Commodity Exchange Act at the time such grant of such lien becomes effective with respect to such Swap Contract. "Commodity Exchange Act" means 7 U.S.C. Section 1 *et seq.*, as amended from time to time, any successor statute, and any rules, regulations and orders applicable thereto.

      2.2  <u>Terms of Secured Obligations</u>.  All persons who may have or acquire an

interest in all or any part of the Property will be considered to have notice of, and will be bound by, the terms of the Debt Instrument described in Paragraph 2.1(a) and each other agreement or instrument made or entered into in connection with each of the Secured Obligations. These terms include any provisions in the Debt Instrument which permit borrowing, repayment and reborrowing, or which provide that the interest rate on one or more of the Secured Obligations may vary from time to time.

3. ASSIGNMENT OF RENTS.

3.1 <u>Assignment</u>. Mortgagor hereby irrevocably, absolutely, presently and unconditionally assigns to Mortgagee all rents, royalties, issues, profits, revenue, income and proceeds of the Property, whether now due, past due or to become due, including all prepaid rents and security deposits (collectively, the "Rents"), and confers upon Mortgagee the right to collect such Rents with or without taking possession of the Property. In the event that anyone establishes and exercises any right to develop, bore for or mine for any water, gas, oil or mineral on or under the surface of the Property, any sums that may become due and payable to Mortgagor as bonus or royalty payments, and any damages or other compensation payable to Mortgagor in connection with the exercise of any such rights, shall also be considered Rents assigned under this Paragraph. <u>THIS IS AN ABSOLUTE ASSIGNMENT, NOT AN ASSIGNMENT FOR SECURITY ONLY.</u>

3.2 <u>Grant of License</u>. Notwithstanding the provisions of Paragraph 3.1, Mortgagee hereby confers upon Mortgagor a license ("License") to collect and retain the Rents as they become due and payable, so long as no Event of Default, as defined in Paragraph 6.2, shall exist and be continuing. If an Event of Default has occurred and is continuing, Mortgagee shall have the right, which it may choose to exercise in its sole discretion, to terminate this License without notice to or demand upon Mortgagor, and without regard to the adequacy of the security for the Secured Obligations.

4. SECURITY INTEREST IN RELATED PERSONALTY.

4.1 <u>Grant of Security Interest</u>. Mortgagor grants to Mortgagee a security interest in, and pledges and assigns to Mortgagee, all of Mortgagor's right, title and interest, whether presently existing or hereafter acquired in and to all of the following property (collectively, the "Personalty"):

(a) All materials, supplies, goods, tools, furniture, fixtures, equipment, and machinery which in all cases is affixed or attached, or to be affixed or attached, in any manner on the Land or the Improvements;

(b) All crops growing or to be grown on the Land (and after severance from the Land); all standing timber upon the Land (and after severance from the Land); all sewer, water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant to the Land) and all evidence of ownership rights pertaining to such water or water rights, ownership of which affect the Land; and all architectural and engineering plans, specifications and drawings which arise from or relate to the Land

-4-

or the Improvements;

(c) All permits, licenses and claims to or demands for the voluntary or involuntary conversion of any of the Land, Improvements, or other Property into cash or liquidated claims, proceeds of all present and future fire, hazard or casualty insurance policies relating to the Land and the Improvements, whether or not such policies are required by Mortgagee, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Land, Improvements, or other Property or any part of them;

(d) All substitutions, replacements, additions, and accessions to any of the above property, and all books, records and files relating to any of the above property, including, without limitation, all general intangibles related to any of the above property and all proceeds of the above property.

5. RIGHTS AND DUTIES OF THE PARTIES.

5.1 Representations and Warranties. Mortgagor represents and warrants that Mortgagor lawfully possesses and holds fee simple title to all of the Land and the Improvements, unless Mortgagor's present interest in the Land and the Improvements is described in Exhibit A as a leasehold interest, in which case Mortgagor lawfully possesses and holds a leasehold interest in the Land and the Improvements as stated in Exhibit A.

5.2 Taxes, Assessments, Liens and Encumbrances. Mortgagor shall pay prior to delinquency all taxes, levies, charges and assessments, including assessments on appurtenant water stock, imposed by any public or quasi-public authority or utility company which are (or if not paid, may become) a lien on all or part of the Property or any interest in it, or which may cause any decrease in the value of the Property or any part of it. Mortgagor shall immediately discharge any lien on the Property which Mortgagee has not consented to in writing, and shall also pay when due each obligation secured by or reducible to a lien, charge or encumbrance which now or hereafter encumbers or appears to encumber all or part of the Property, whether the lien, charge or encumbrance is or would be senior or subordinate to this Mortgage.

5.3 Damages and Insurance and Condemnation Proceeds.

(a) Mortgagor hereby absolutely and irrevocably assigns to Mortgagee, and authorizes the payor to pay to Mortgagee, the following claims, causes of action, awards, payments and rights to payment (collectively, the "Claims"):

(i) all awards of damages and all other compensation payable directly or indirectly because of a condemnation, proposed condemnation or taking for public or private use which affects all or part of the Property or any interest in it;

(ii) all other awards, claims and causes of action, arising out of

-5-

any breach of warranty or misrepresentation affecting all or any part of the Property, or for damage or injury to, or defect in, or decrease in value of all or part of the Property or any interest in it;

(iii) all proceeds of any insurance policies payable because of loss sustained to all or part of the Property, whether or not such insurance policies are required by Mortgagee; and

(iv) all interest which may accrue on any of the foregoing.

(b) Mortgagor shall immediately notify Mortgagee in writing if:

(i) any damage occurs or any injury or loss is sustained to all or part of the Property, or any action or proceeding relating to any such damage, injury or loss is commenced; or

(ii) any offer is made, or any action or proceeding is commenced, which relates to any actual or proposed condemnation or taking of all or part of the Property.

If Mortgagee chooses to do so, it may in its own name appear in or prosecute any action or proceeding to enforce any cause of action based on breach of warranty or misrepresentation, or for damage or injury to, defect in, or decrease in value of all or part of the Property, and it may make any compromise or settlement of the action or proceeding. Mortgagee, if it so chooses, may participate in any action or proceeding relating to condemnation or taking of all or part of the Property, and may join Mortgagor in adjusting any loss covered by insurance.

(c) All proceeds of the Claims assigned to Mortgagee under this Paragraph shall be paid to Mortgagee. In each instance, Mortgagee shall apply those proceeds first toward reimbursement of all of Mortgagee's costs and expenses of recovering the proceeds, including attorneys' fees. Mortgagor further authorizes Mortgagee, at Mortgagee's option and in Mortgagee's sole discretion, and regardless of whether there is any impairment of the Property, (i) to apply the balance of such proceeds, or any portion of them, to pay or prepay some or all of the Secured Obligations in such order or proportion as Mortgagee may determine, or (ii) to hold the balance of such proceeds, or any portion of them, in an interest-bearing account to be used for the cost of reconstruction, repair or alteration of the Property, or (iii) to release the balance of such proceeds, or any portion of them, to Mortgagor. If any proceeds are released to Mortgagor, Mortgagee shall not be obligated to see to, approve or supervise the proper application of such proceeds. If the proceeds are held by Mortgagee to be used to reimburse Mortgagor for the costs of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition, or such other condition as Mortgagee may approve in writing. Mortgagee may, at Mortgagee's option, condition disbursement of the proceeds on Mortgagee's approval of such plans and specifications prepared by an architect satisfactory to Mortgagee, contractor's cost estimates, architect's

4814-3056-1106.1.25560.63052

certificates, waivers of liens, sworn statements of mechanics and materialmen, and such other evidence of costs, percentage of completion of construction, application of payments, and satisfaction of liens as Mortgagee may reasonably require.

5.4 <u>Insurance</u>. Mortgagor shall provide and maintain in force at all times all risk property damage insurance (including without limitation windstorm coverage, and hurricane coverage as applicable) on the Property and such other type of insurance on the Property as may be required by Mortgagee in its reasonable judgment. At Mortgagee's request, Mortgagor shall provide Mortgagee with a counterpart original of any policy, together with a certificate of insurance setting forth the coverage, the limits of liability, the carrier, the policy number and the expiration date. Each such policy of insurance shall be in an amount, for a term, and in form and content satisfactory to Mortgagee, and shall be written only by companies approved by Mortgagee. In addition, each policy of hazard insurance shall include a Form 438BFU or equivalent loss payable endorsement in favor of Mortgagee.

5.5 <u>Maintenance and Preservation of Property</u>.

(a) Mortgagor shall keep the Property in good condition and repair and shall not commit or allow waste of the Property. Mortgagor shall not remove or demolish the Property or any part of it, or alter, restore or add to the Property, or initiate or allow any change in any zoning or other land use classification which affects the Property or any part of it, except with Mortgagee's express prior written consent in each instance.

(b) If all or part of the Property becomes damaged or destroyed, Mortgagor shall promptly and completely repair and/or restore the Property in a good and workmanlike manner in accordance with sound building practices, regardless of whether or not Mortgagee agrees to disburse insurance proceeds or other sums to pay costs of the work of repair or reconstruction under Paragraph 5.3.

(c) Mortgagor shall not commit or allow any act upon or use of the Property which would violate any applicable law or order of any governmental authority, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property. Mortgagor shall not bring or keep any article on the Property or cause or allow any condition to exist on it, if that could invalidate or would be prohibited by any insurance coverage required to be maintained by Mortgagor on the Property or any part of it under this Mortgage.

(d) If Mortgagor's interest in the Property is a leasehold interest, Mortgagor shall observe and perform all obligations of Mortgagor under any lease or leases and shall refrain from taking any actions prohibited by any lease or leases. Mortgagor shall preserve and protect the leasehold estate and its value.

(e) If the Property is agricultural, Mortgagor shall farm the Property in a good and husbandlike manner. Mortgagor shall keep all trees, vines and crops on the Property properly cultivated, irrigated, fertilized, sprayed and fumigated, and shall

-7-

replace all dead or unproductive trees or vines with new ones. Mortgagor shall prepare for harvest, harvest, remove and sell any crops growing on the Property. Mortgagor shall keep all buildings, fences, ditches, canals, wells and other farming improvements on the Property in first class condition, order and repair.

(f) Mortgagor shall perform all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value.

5.6 <u>Releases, Extensions, Modifications and Additional Security.</u> Without affecting the personal liability of any person, including Mortgagor (or Obligor, if different from Mortgagor), for the payment of the Secured Obligations or the lien of this Mortgage on the remainder of the Property for the unpaid amount of the Secured Obligations, Mortgagee may from time to time and without notice:

(a) release any person liable for payment of any Secured Obligation;

(b) extend the time for payment, or otherwise alter the terms of payment, of any Secured Obligation;

(c) accept additional real or personal property of any kind as security for any Secured Obligation, whether evidenced by deeds of trust, mortgages, security agreements or any other instruments of security;

(d) alter, substitute or release any property securing the Secured Obligations;

(e) consent to the making of any plat or map of the Property or any part of it;

(f) join in granting any easement or creating any restriction affecting the Property;

(g) join in any subordination or other agreement affecting this Mortgage or the lien of it; or

(h) release the Property or any part of it from the lien of this Mortgage.

5.7 <u>Release.</u> When all of the Secured Obligations have been paid in full and no further commitment to extend credit continues, Mortgagee shall release the Property, or so much of it as is then held under this Mortgage, from the lien of this Mortgage.

5.8 <u>Compensation and Reimbursement of Costs and Expenses.</u>

(a) Mortgagor agrees to pay fees in the maximum amounts legally permitted, or reasonable fees as may be charged by Mortgagee when the law provides no maximum limit, for any services that Mortgagee may render in connection with this

-8-

Mortgage, including Mortgagee's providing a statement of the Secured Obligations. Mortgagor shall also pay or reimburse all of Mortgagee's costs and expenses which may be incurred in rendering any such services.

(b) Mortgagor further agrees to pay or reimburse Mortgagee for all costs, expenses and other advances which may be incurred or made by Mortgagee to protect or preserve the Property or to enforce any terms of this Mortgage, including the exercise of any rights or remedies afforded to Mortgagee under Paragraph 6.3, whether any lawsuit is filed or not, or in defending any action or proceeding arising under or relating to this Mortgage, including attorneys' fees and other legal costs, costs of any sale of the Property and any cost of evidence of title.

(c) Mortgagor shall pay all obligations arising under this Paragraph immediately upon demand by Mortgagee. Each such obligation shall be added to, and considered to be part of, the principal of the Secured Obligations, and shall bear interest from the date the obligation arises at the rate provided in any instrument or agreement evidencing the Secured Obligations. If more than one rate of interest is applicable to the Secured Obligations, the highest rate shall be used for purposes hereof.

5.9 Exculpation and Indemnification.

(a) Mortgagee shall not be directly or indirectly liable to Mortgagor or any other person as a consequence of any of the following:

(i) Mortgagee's exercise of or failure to exercise any rights, remedies or powers granted to it in this Mortgage;

(ii) Mortgagee's failure or refusal to perform or discharge any obligation or liability of Mortgagor under any agreement related to the Property or under this Mortgage;

(iii) Mortgagee's failure to produce Rents from the Property or to perform any of the obligations of the lessor under any lease covering the Property;

(iv) any waste committed by lessees of the Property or any other parties, or any dangerous or defective condition of the Property; or

(v) any loss sustained by Mortgagor or any third party resulting from any act or omission of Mortgagee in operating or managing the Property upon exercise of the rights or remedies afforded Mortgagee under Paragraph 6.3, unless the loss is caused by the willful misconduct and bad faith of Mortgagee.

Mortgagor hereby expressly waives and releases all liability of the types described above, and agrees that no such liability shall be asserted against or imposed upon Mortgagee.

(b) Mortgagor agrees to indemnify Mortgagee against and hold

4814-3056-1106.1.25560.63052

Mortgagee harmless from all losses, damages, liabilities, claims, causes of action, judgments, court costs, attorneys' fees and other legal expenses, cost of evidence of title, cost of evidence of value, and other costs and expenses which Mortgagee may suffer or incur in performing any act required or permitted by this Mortgage or by law or because of any failure of Mortgagor to perform any of its obligations. This agreement by Mortgagor to indemnify Mortgagee shall survive the release and cancellation of any or all of the Secured Obligations and the full or partial release of this Mortgage.

5.10 <u>Defense and Notice of Claims and Actions</u>. At Mortgagor's sole expense, Mortgagor shall protect, preserve and defend the Property and title to and right of possession of the Property, and the security of this Mortgage and the rights and powers of Mortgagee created under it, against all adverse claims. Mortgagor shall give Mortgagee prompt notice in writing if any claim is asserted which does or could affect any of these matters, or if any action or proceeding is commenced which alleges or relates to any such claim.

5.11 <u>Representation and Warranty Regarding Hazardous Substances</u>. Before signing this Mortgage, Mortgagor researched and inquired into the previous uses and ownership of the Property. Based on that due diligence, Mortgagor represents and warrants that to the best of its knowledge, no hazardous substance has been disposed of or released or otherwise exists in, on, under or onto the Property, except as Mortgagor has disclosed to Mortgagee in writing. Mortgagor further represents and warrants that Mortgagor has complied, and will comply and cause all occupants of the Property to comply, with all current and future laws, regulations and ordinances or other requirements of any governmental authority relating to or imposing liability or standards of conduct concerning protection of health or the environment or hazardous substances ("Environmental Laws"). Mortgagor shall promptly, at Mortgagor's sole cost and expense, take all reasonable actions with respect to any hazardous substances or other environmental condition at, on, or under the Property necessary to (i) comply with all applicable Environmental Laws; (ii) allow continued use, occupation or operation of the Property; or (iii) maintain the fair market value of the Property. Mortgagor acknowledges that hazardous substances may permanently and materially impair the value and use of the Property. "Hazardous substance" means any substance, material or waste that is or becomes designated or regulated as "toxic," "hazardous," "pollutant," or "contaminant" or a similar designation or regulation under any current or future federal, state or local law (whether under common law, statute, regulation or otherwise) or judicial or administrative interpretation of such, including without limitation petroleum or natural gas.

5.12 <u>Site Visits, Observation and Testing</u>. Mortgagee and its agents and representatives shall have the right at any reasonable time, after giving reasonable notice to Mortgagor, to enter and visit the Property for the purposes of performing appraisals, observing the Property, taking and removing environmental samples, and conducting tests on any part of the Property. Mortgagor shall reimburse Mortgagee on demand for the costs of any such environmental investigation and testing. Mortgagee will make reasonable efforts during any site visit, observation or testing conducted pursuant this Paragraph to avoid interfering with Mortgagor's use of the Property. Mortgagee is under no duty, however, to visit or observe the Property or to conduct tests, and any such acts by Mortgagee will be solely for the purposes of protecting Mortgagee's security and preserving Mortgagee's rights under this Mortgage. No site

-10-

visit, observation or testing or any report or findings made as a result thereof ("Environmental Report") (i) will result in a waiver of any default of Mortgagor; (ii) impose any liability on Mortgagee; or (iii) be a representation or warranty of any kind regarding the Property (including its condition or value or compliance with any laws) or the Environmental Report (including its accuracy or completeness). In the event Mortgagee has a duty or obligation under applicable laws, regulations or other requirements to disclose an Environmental Report to Mortgagor or any other party, Mortgagor authorizes Mortgagee to make such a disclosure. Mortgagee may also disclose an Environmental Report to any regulatory authority, and to any other parties as necessary or appropriate in Mortgagee's judgment. Mortgagor further understands and agrees that any Environmental Report or other information regarding a site visit, observation or testing that is disclosed to Mortgagor by Mortgagee or its agents and representatives is to be evaluated (including any reporting or other disclosure obligations of Mortgagor) by Mortgagor without advice or assistance from Mortgagee.

5.13 <u>Additional Provisions Relating to Condominiums</u>. If the Property is subject to a condominium declaration of conditions, covenants and restrictions recorded in the official records of the county in which the Property is located (the "Declaration"), the following provisions shall apply.

(a) The provisions contained in this Mortgage are obligations of Mortgagor in addition to Mortgagor's obligations under the Declaration with respect to similar matters, and shall not restrict or limit Mortgagor's duties and obligations to keep and perform promptly all of its obligations as unit owner under the Declaration.

(b) Mortgagor shall at all times fully perform and comply with all the agreements, covenants, terms and conditions imposed upon unit owners under the Declaration, and if Mortgagor fails to do so, Mortgagee may (but shall not be obligated to) take any action Mortgagee deems necessary or desirable to prevent or cure any default thereunder. Mortgagee may also take such action as it deems necessary or desirable to cure a default under the Declaration by Mortgagor or any other party occupying the unit(s) (a "Unit Occupant") encumbered by this Mortgage, upon receipt by Mortgagee from the condominium association under the Declaration (the "Association") of written notice of such default, even though the existence of such default or the nature thereof may be questioned or denied by Mortgagor or by any party on behalf of Mortgagor. Mortgagee may pay and expend such sums of money as Mortgagee in its sole discretion deems necessary to prevent or cure any default by Mortgagor or a Unit Occupant, and Mortgagor hereby agrees to pay to Mortgagee, immediately and without demand, all such sums so paid and expended by Mortgagee, together with interest thereon from the date of each such payment at the rate (the "Demand Rate") of two percent (2%) in excess of the then current rate of interest under the Debt Instrument. All sums so paid and expended by Mortgagee, and the interest thereon, shall be added to and be secured by the lien of this Mortgage. At Mortgagee's request, Mortgagor will submit satisfactory evidence of payment of all of its monetary obligations under the Declaration (including but not limited to rents, taxes, assessments, insurance premiums and operating expenses).

(c) At Mortgagee's request, Mortgagor will submit satisfactory evidence

-11-

of payment of all of its monetary obligations under the Declaration (including but not limited to rents, taxes, assessments, insurance premiums and operating expenses).

(d) Mortgagor shall advise Mortgagee in writing of the giving of any notice to Mortgagor by the Association under the Declaration of any default by Mortgagor as unit owner or by a Unit Occupant thereunder in the performance or observance of any of the terms, conditions and covenants to be performed or observed by Mortgagor or such Unit Occupant thereunder, and Mortgagor shall deliver to Mortgagee a true copy of each such notice.

(e) If any action, proceeding, motion or notice shall be commenced or filed in respect of the Association in connection with any case (including a case commenced or filed under the Bankruptcy Code), Mortgagee shall have the option, to the exclusion of Mortgagor, exercisable upon notice from Mortgagee to Mortgagor, to conduct and control any such litigation with counsel of Mortgagee's choice. Mortgagee may proceed in its own name or in the name of Mortgagor in connection with any such litigation, and Mortgagor agrees to execute any and all powers, authorizations, consents or other documents required by Mortgagee in connection therewith. Mortgagor shall, upon demand, pay to Mortgagee all costs and expenses (including attorneys' fees) paid or incurred by Mortgagee in connection with the prosecution or conduct of any such proceedings. Any such costs or expenses not paid by Mortgagor as aforesaid shall be secured by the lien of this Mortgage and shall be added to the principal amount of the indebtedness secured hereby. Mortgagor shall not commence any action, suit, proceeding or case, or file any application or make any motion, in respect of the Declaration in any such case without the prior written consent of Mortgagee.

(f) Mortgagor will use its best efforts to obtain and deliver to Mortgagee within twenty (20) days after written request by Mortgagee, an estoppel certificate from the Association setting forth (i) the name of the unit owner, (ii) that the Declaration has not been modified or, if it has been modified, the date of each modification (together with copies of each such modification), (iii) the amount of common expenses and other assessments payable by Mortgagor as unit owner under the Declaration, (iv) the date to which all common expenses and other assessments have been paid by Mortgagor as unit owner under the Declaration, (v) whether there are any alleged defaults by Mortgagor or a Unit Occupant under the Declaration and, if so, setting forth the nature thereof in reasonable detail, and (vi) as to such other matters as Mortgagee may reasonably request.

(g) Mortgagor represents and warrants to Mortgagee that as of the date hereof, no default under the Declaration has occurred and is continuing.

(h) Mortgagor shall take such actions as may be reasonable to insure that the Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Mortgagee.

(i) Mortgagor shall not, except after notice to Mortgagee and with Mortgagee's prior written consent, either partition or subdivide the Property or consent

-12-

to:

(i)    the abandonment or termination of the condominium(s) encumbered by this Mortgage, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii)    any amendment to any provision of the Declaration, the Association's bylaws or articles or any rules and regulations promulgated by the Association;

(iii)    termination of professional management and assumption of self-management of the Association; or

(iv)    any action which would have the effect of rendering the public liability insurance coverage maintained by the Association unacceptable to Mortgagee.

## 6.  ACCELERATING TRANSFERS, DEFAULT AND REMEDIES.

### 6.1  Accelerating Transfers

(a)  "Accelerating Transfer" means any sale, contract to sell, conveyance, encumbrance, or other transfer, whether voluntary, involuntary, by operation of law or otherwise, of all or any material part of the Property or any interest in it, including any transfer or exercise of any right to drill for or to extract any water (other than for Mortgagor's own use), oil, gas or other hydrocarbon substances or any mineral of any kind on or under the surface of the Property. If Mortgagor is a corporation, "Accelerating Transfer" also means any transfer or transfers of shares possessing, in the aggregate, more than fifty percent (50%) of the voting power.  If Mortgagor is a partnership, "Accelerating Transfer" also means withdrawal or removal of any general partner, dissolution of the partnership under applicable law, or any transfer or transfers of, in the aggregate, more than fifty percent (50%) of the partnership interests.  If Mortgagor is a limited liability company, "Accelerating Transfer" also means withdrawal or removal of any managing member, termination of the limited liability company or any transfer or transfers of, in the aggregate, more than fifty percent (50%) of the voting power or in the aggregate more than fifty percent of the ownership of the economic interest in the Mortgagor.

(b)  Mortgagor agrees that Mortgagor shall not make any Accelerating Transfer, unless the transfer is preceded by Mortgagee's express written consent to the particular transaction and transferee.  Mortgagee may withhold such consent in its sole discretion.  If any Accelerating Transfer occurs, Mortgagee in its sole discretion may declare all of the Secured Obligations to be immediately due and payable, and Mortgagee may invoke any rights and remedies provided by Paragraph 6.3 of this Mortgage.

-13-

6.2 <u>Events of Default</u>. The occurrence of any one or more of the following events, at the option of Mortgagee, shall constitute an event of default ("Event of Default") under this Mortgage:

(a) Obligor fails to make any payment, when due, under the Debt Instrument (after giving effect to any applicable grace period), or any other default occurs under and as defined in the Debt Instrument or in any other instrument or agreement evidencing any of the Secured Obligations and such default continues beyond any applicable cure period;

(b) Mortgagor fails to make any payment or perform any obligation which arises under this Mortgage;

(c) Mortgagor makes or permits the occurrence of an Accelerating Transfer in violation of Paragraph 6.1;

(d) Any representation or warranty made in connection with this Mortgage or the Secured Obligations proves to have been false or misleading in any material respect when made;

(e) Any default occurs under any other mortgage on all or any part of the Property, or under any obligation secured by such mortgage, whether such mortgage is prior to or subordinate to this Mortgage; or

(f) An event occurs which gives Mortgagee the right or option to terminate any Swap Contract secured by this Mortgage.

6.3 <u>Remedies</u>. At any time after the occurrence of an Event of Default, Mortgagee shall be entitled to invoke any and all of the rights and remedies described below, as well as any other rights and remedies authorized by law. All of such rights and remedies shall be cumulative, and the exercise of any one or more of them shall not constitute an election of remedies.

(a) Mortgagee may declare any or all of the Secured Obligations to be due and payable immediately, and may terminate any Swap Contract secured by this Mortgage in accordance with its terms.

(b) Mortgagee may apply to any court of competent jurisdiction for, and obtain appointment of, a receiver for the Property.

(c) Mortgagee, in person, by agent or by court-appointed receiver, may enter, take possession of, manage and operate all or any part of the Property, and in its own name or in the name of Mortgagor sue for or otherwise collect any and all Rents, including those that are past due, and may also do any and all other things in connection with those actions that Mortgagee may in its sole discretion consider necessary and

-14-

appropriate to protect the security of this Mortgage. Such other things may include: entering into, enforcing, modifying, or canceling leases on such terms and conditions as Mortgagee may consider proper; obtaining and evicting tenants; fixing or modifying Rents; completing any unfinished construction; contracting for and making repairs and alterations; performing such acts of cultivation or irrigation as necessary to conserve the value of the Property; and preparing for harvest, harvesting and selling any crops that may be growing on the property. Mortgagor hereby irrevocably constitutes and appoints Mortgagee as its attorney-in-fact to perform such acts and execute such documents as Mortgagee in its sole discretion may consider to be appropriate in connection with taking these measures, including endorsement of Mortgagor's name on any instruments. Mortgagor agrees to deliver to Mortgagee all books and records pertaining to the Property, including computer-readable memory and any computer hardware or software necessary to access or process such memory, as may reasonably be requested by Mortgagee in order to enable Mortgagee to exercise its rights under this Paragraph.

(d) Mortgagee may cure any breach or default of Mortgagor, and if it chooses to do so in connection with any such cure, Mortgagee may also enter the Property and/or do any and all other things which it may in its sole discretion consider necessary and appropriate to protect the security of this Mortgage. Such other things may include: appearing in and/or defending any action or proceeding which purports to affect the security of, or the rights or powers of Mortgagee under, this Mortgage; paying, purchasing, contesting or compromising any encumbrance, charge, lien or claim of lien which in Mortgagee's sole judgment is or may be senior in priority to this Mortgage, such judgment of Mortgagee to be conclusive as among the parties to this Mortgage; obtaining insurance and/or paying any premiums or charges for insurance required to be carried under this Mortgage; otherwise caring for and protecting any and all of the Property; and/or employing counsel, accountants, contractors and other appropriate persons to assist Mortgagee. Mortgagee may take any of the actions permitted hereunder either with or without giving notice to any person.

(e) Mortgagee may bring an action in any court of competent jurisdiction to foreclose this instrument or to obtain specific enforcement of any of the covenants or agreements of this Mortgage.

(f) Mortgagee may exercise the remedies contained in the Debt Instrument or in any other instrument or agreement evidencing any of the Secured Obligations.

(g) Mortgagee may proceed under the Uniform Commercial Code as to all or any part of the Personalty, and in conjunction therewith may exercise all of the rights, remedies and powers of a secured creditor under the Uniform Commercial Code. When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Mortgagee may sell the Personalty at a public sale to be held at the time and place specified in the notice of sale. It shall be deemed commercially reasonable for the Mortgagee to dispose of the Personalty without giving any warranties as to the Personalty and specifically disclaiming all disposition warranties.

-15-

Alternatively, Mortgagee may choose to dispose of some or all of the Property, in any combination consisting of both personal property and real property, in one sale to be held in accordance with the law and procedures applicable to real property, as permitted by Article 9 of the Uniform Commercial Code. Mortgagor agrees that such a sale of personal property together with real property constitutes a commercially reasonable sale of the personal property.

(h) Mortgagee may exercise the STATUTORY POWER OF SALE.

6.4 <u>Application of Sale Proceeds and Rents</u>.

(a) Mortgagee shall apply the proceeds of any sale of the Property in the following manner: first, to pay the portion of the Secured Obligations attributable to the costs, fees and expenses of the sale, including costs of evidence of title in connection with the sale; and, second, to pay all other Secured Obligations in any order and proportions as Mortgagee in its sole discretion may choose. The remainder, if any, shall be remitted to the person or persons entitled thereto.

(b) Mortgagee shall apply any and all Rents collected by it, and any and all sums other than proceeds of any sale of the Property which Mortgagee may receive or collect under Paragraph 6.3, in the following manner: first, to pay the portion of the Secured Obligations attributable to the costs and expenses of operation and collection that may be incurred by Mortgagee or any receiver; and, second, to pay all other Secured Obligations in any order and proportions as Mortgagee in its sole discretion may choose. The remainder, if any, shall be remitted to the person or persons entitled thereto. Mortgagee shall have no liability for any funds which it does not actually receive.

7. <u>MISCELLANEOUS PROVISIONS</u>

7.1 <u>No Waiver or Cure</u>.

(a) Each waiver by Mortgagee must be in writing, and no waiver shall be construed as a continuing waiver. No waiver shall be implied from any delay or failure by Mortgagee to take action on account of any default of Mortgagor. Consent by Mortgagee to any act or omission by Mortgagor shall not be construed as a consent to any other or subsequent act or omission or to waive the requirement for Mortgagee's consent to be obtained in any future or other instance.

(b) If any of the events described below occurs, that event alone shall not cure or waive any breach, Event of Default or notice of default under this Mortgage or invalidate any act performed pursuant to any such default or notice; or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed); or impair the security of this Mortgage; or prejudice Mortgagee or any receiver in the exercise of any right or remedy afforded any of them under this Mortgage; or be construed as an affirmation by Mortgagee of any tenancy, lease or option, or a subordination of the lien of this Mortgage:

-16-

(i) Mortgagee, its agent or a receiver takes possession of all or any part of the Property;

(ii) Mortgagee collects and applies Rents, either with or without taking possession of all or any part of the Property;

(iii) Mortgagee receives and applies to any Secured Obligation proceeds of any Property, including any proceeds of insurance policies, condemnation awards, or other claims, property or rights assigned to Mortgagee under this Mortgage;

(iv) Mortgagee makes a site visit, observes the Property and/or conducts tests thereon;

(v) Mortgagee receives any sums under this Mortgage or any proceeds of any collateral held for any of the Secured Obligations, and applies them to one or more Secured Obligations;

(vi) Mortgagee or any receiver performs any act which it is empowered or authorized to perform under this Mortgage or invokes any right or remedy provided under this Mortgage.

7.2 <u>Powers of Mortgagee</u>. Mortgagee may take any of the actions permitted under Paragraphs 6.3(b) and/or 6.3(c) regardless of the adequacy of the security for the Secured Obligations, or whether any or all of the Secured Obligations have been declared to be immediately due and payable, or whether notice of default and election to sell has been given under this Mortgage.

7.3 <u>Nonborrower Mortgagor</u>.

(a) If any Mortgagor ("Nonborrower Mortgagor") is not the Obligor under the Debt Instrument described in Paragraph 2.1(a), such Nonborrower Mortgagor authorizes Mortgagee to perform any of the following acts at any time, all without notice to Nonborrower Mortgagor and without affecting Mortgagee's rights or Nonborrower Mortgagor's obligations under this Mortgage:

(i) Mortgagee may alter any terms of the Debt Instrument or any part of it, including renewing, compromising, extending or accelerating, or otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the Debt Instrument or any part of it;

(ii) Mortgagee may take and hold security for the Debt Instrument, accept additional or substituted security for the Debt Instrument, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect, sell or otherwise dispose of any such security;

-17-

(iii)   Mortgagee may apply any security now or later held for the Debt Instrument in any order that Mortgagee in its sole discretion may choose, and may direct the order and manner of any sale of all or any part of it and bid at any such sale;

(iv)   Mortgagee may release Obligor of its liability for the Debt Instrument or any part of it;

(v)   Mortgagee may substitute, add or release any one or more guarantors or endorsers of the Debt Instrument; and

(vi)   Mortgagee may extend other credit to Obligor, and may take and hold security for the credit so extended, whether or not such security also secures the Debt Instrument.

(b)   Nonborrower Mortgagor waives:

(i)   Any right it may have to require Mortgagee to proceed against Obligor, proceed against or exhaust any security held from Obligor, or pursue any other remedy in Mortgagee's power to pursue;

(ii)   Any defense based on any legal disability of Obligor, any discharge or limitation of the liability of Obligor to Mortgagee, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor-relief proceeding, or from any other cause, or any claim that Nonborrower Mortgagor's obligations exceed or are more burdensome than those of Obligor;

(iii)   All presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Mortgage and of the existence, creation, or incurring of new or additional indebtedness of Obligor, and demands and notices of every kind;

(iv)   Any defense based on or arising out of any defense that Obligor may have to the payment or performance of the Debt Instrument or any part of it; and

(v)   Until the Secured Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute, all rights to enforce any remedy that the Mortgagee may have against Obligor, and all rights to participate in any security now or later to be held by Mortgagee for the Debt Instrument.

-18-

(c)   Nonborrower Mortgagor assumes full responsibility for keeping informed of Obligor's financial condition and business operations and all other circumstances affecting Obligor's ability to pay and perform its obligations to Mortgagee, and agrees that Mortgagee shall have no duty to disclose to Nonborrower Mortgagor any information which Mortgagee may receive about Obligor's financial condition, business operations, or any other circumstances bearing on its ability to perform.

(d)   No provision or waiver in this Mortgage shall be construed as limiting the generality of any other provision or waiver contained in this Mortgage.

(e)   For purposes of this Paragraph 7.3, all references to the Debt Instrument shall also include any instrument or agreement executed by Obligor subsequent to the date of this Mortgage which is secured by this Mortgage in accordance with the provisions of Paragraphs 2.1(c) and 2.1(d).

7.4   _Merger_.  No merger shall occur as a result of Mortgagee's acquiring any other estate in or any other lien on the Property unless Mortgagee consents to a merger in writing.

7.5   _Joint and Several Liability_.  If Mortgagor consists of more than one person, each shall be jointly and severally liable for the faithful performance of all of Mortgagor's obligations under this Mortgage.

7.6   _Applicable Law_.   This Mortgage shall be governed by the laws of the Commonwealth of Massachusetts.

7.7   _Successors in Interest_.  The terms, covenants and conditions of this Mortgage shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties. However, this Paragraph does not waive the provisions of Paragraph 6.1.

7.8   **Waiver of Jury Trial.**   **EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS MORTGAGE OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION HEREWITH OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (a) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (b) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS MORTGAGE AND THE OTHER DOCUMENTS CONTEMPLATED HEREBY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION AND (c) CERTIFIES THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE.**

-19-

7.9 <u>Waiver of Class Actions</u>. The terms "Claim" or "Claims" refer to any disputes, controversies, claims, counterclaims, allegations of liability, theories of damage, or defenses between CenTrust Bank, National Association, its subsidiaries and affiliates, on the one hand, and the other parties to this Mortgage, on the other hand (all of the foregoing each being referred to as a "Party" and collectively as the "Parties"). Whether in state court, federal court, or any other venue, jurisdiction, or before any tribunal, the Parties agree that all aspects of litigation and trial of any Claim will take place without resort to any form of class or representative action. Thus the Parties may only bring Claims against each other in an individual capacity and waive any right they may have to do so as a class representative or a class member in a class or representative action. **THIS CLASS ACTION WAIVER PRECLUDES ANY PARTY FROM PARTICIPATING IN OR BEING REPRESENTED IN ANY CLASS OR REPRESENTATIVE ACTION REGARDING A CLAIM.**

7.10 <u>Interpretation</u>. Whenever the context requires, all words used in the singular will be construed to have been used in the plural, and vice versa, and each gender will include any other gender. The captions of the sections of this Mortgage are for convenience only and do not define or limit any terms or provisions. The word "include(s)" means "include(s), without limitation," and the word "including" means "including, but not limited to." The word "obligations" is used in its broadest and most comprehensive sense, and includes all primary, secondary, direct, indirect, fixed and contingent obligations. It further includes all principal, interest, prepayment charges, late charges, loan fees and any other fees and charges accruing or assessed at any time, as well as all obligations to perform acts or satisfy conditions. No listing of specific instances, items or matters in any way limits the scope or generality of any language of this Mortgage. The Exhibits to this Mortgage are hereby incorporated in this Mortgage.

7.11 <u>In-House Counsel Fees</u>. Whenever Mortgagor is obligated to pay or reimburse Mortgagee for any attorneys' fees, those fees shall include the allocated costs for services of in-house counsel to the extent permitted by applicable law.

7.12 <u>Waiver of Marshaling</u>. Mortgagor waives all rights, legal and equitable, it may now or hereafter have to require marshaling of assets or to direct the order in which any of the Property will be sold in the event of any sale under this Mortgage. Each successor and assign of Mortgagor, including any holder of a lien subordinate to this Mortgage, by acceptance of its interest or lien agrees that it shall be bound by the above waiver, as if it had given the waiver itself.

7.13 <u>Waiver of Homestead</u>. Mortgagor hereby abandons and waives all claims of homestead on the Property and does hereby forever release and discharge the Property from any and all claims of homestead.

7.14 <u>Severability</u>. If any provision of this Mortgage should be held unenforceable or void, that provision shall be deemed severable from the remaining provisions and in no way affect the validity of this Mortgage except that if such provision relates to the payment of any monetary sum, then Mortgagee may, at its option, declare all Secured Obligations immediately due and payable.

-20-

7.15 <u>Notices</u>. Mortgagor hereby requests that a copy of notice of default and notice of sale be mailed to it at the address set forth below. That address is also the mailing address of Mortgagor as debtor under the Uniform Commercial Code. Mortgagee's address given below is the address for Mortgagee as secured party under the Uniform Commercial Code.

Addresses for Notices to Mortgagor:
Denise Ann Campbell
Mark W. Allen
845 Maplewood Road
Lake Forest, Illinois 60045

Address for Notices to Mortgagee:
CenTrust Bank, National Association
385 Waukegan Road
Northbrook, Illinois 60062
Attention: Tom Meyer

7.16 <u>SBA Loan</u>. The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

(a) When SBA is the holder of the Debt Instruments, this document and all documents evidencing or securing the Loan will be construed in accordance with federal law.

(b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. Neither the Borrower nor any guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

(c) Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Debt Instruments secured by this instrument.

*Remainder of page left blank intentionally – signature page to follow.*

4814-3056-1106.1.25560.63052

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage as of the date first above written, intending to create an instrument executed under seal.

WITNESS:                                          MORTGAGOR:

_____              _Denise Ann Campbell_ (Seal)
                                                  DENISE ANN CAMPBELL, individually

_____              _Mark W Allen_ (Seal)
                                                  MARK W. ALLEN, individually

_Common Mass._____              )
                                                  ) SS:
COUNTY OF _Barnfield_                 )

On this 17th day of _Nov_____, 2017, before me, the undersigned notary public, Denise Ann Campbell and Mark W. Allen personally appeared, proved to me through satisfactory evidence of identification, which were _drivers lic_____, to be the person whose names are signed on the preceding or attached document, and acknowledged to me that they signed it voluntarily for its stated purpose.

_____ (official signature and seal of notary public)

MICHAEL J. HAYES
NOTARY PUBLIC
Commonwealth of Massachusetts
My Commission Expires
May 11, 2023

-22-

## EXHIBIT A TO MORTGAGE

Exhibit A to MORTGAGE dated as of _Nov. 17_, 2017 given by Denise Ann Campbell and Mark W. Allen, collectively as "Mortgagor" to CenTrust Bank, National Association, as "Mortgagee."

### Description of Property

That certain parcel of land, together with the buildings thereon, situated in Chatham, Barnstable County, Massachusetts, bounded and described as follows:

Beginning at a stake and stones at the Northeasterly corner of the granted premises, on the Southerly side of Eliphamets Lane, a town way, and land now or formerly of Beatrice S. Lightfoot, formerly of Merton Rogers; Thence running Westerly by said Town Road to the Mill Cove or Mill Pond, about sixty-one (61) feet;
Thence running Southerly by the shore of Mill Pond about fifty (50) feet to land now or formerly of Winfred Crockett, formerly of Nathaniel A. Bearse;
Thence running Easterly by said land of Crockett, sixty-one (61) feet to said land now or formerly of Beatrice S. Lightfoot; and
Thence running Northerly by said land of Lightfoot forty-eight (48) feet to the first mentioned bound and point of beginning.

For Mortgagor's title, see Deed registered with the Barnstable County Registry of Deeds in Book 30908 Page 64.

### Street Address of Property

61 Eliphamets Lane, Chatham, Massachusetts 02633

Exhibit H

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

CenTrust Bank, National Association
385 Waukegan Road
Northbrook, Illinois 60062
Attention: Tom Meyer

THIS DOCUMENT PREPARED BY:

Chuhak & Tecson, P.C.
30 S. Wacker Dr., Ste. 2600
Chicago, Illinois 60606
Attention: Evan D. Blewett

*Precision Title Company*
*2050 Algonquin Road, Suite 602*
*Schaumburg, IL 60173*

*PRECISION TITLE*

Image# 058589880025 Type: MTG
Recorded: 09/13/2019 at 11:20:19 AM
Receipt#: 2019-00047273
Page 1 of 25
Fees: $60.00
IL Rental Housing Fund: $9.00
Lake County IL Recorder
Mary Ellen Vanderventer Recorder
File 7592167

PTC 19-06649

Space above this line for Recorder's Use

## MORTGAGE, ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

This Mortgage, Assignment of Rents, Security Agreement and Fixture Filing, dated as of _7/27/19_, 2019, is given by Mark Allen and Denise A. Campbell,, husband and wife (collectively, "Mortgagor"), to CenTrust Bank, National Association, as mortgagee ("Mortgagee" or "Lender").

1. <u>GRANT</u>.

   1.1 <u>The Property</u>. For the purpose of securing payment and performance of the Secured Obligations defined in Section 2 below, Mortgagor hereby irrevocably and unconditionally grants, conveys, transfers and assigns to Mortgagee, upon the statutory mortgage condition for breach of which this Mortgage is subject to foreclosure as provided by law, with mortgage covenants and right of entry and possession, all estate, right, title and interest which Mortgagor now has or may later acquire in the following property (all or any part of such property, or any interest in all or any part of it, together with the Personalty (as hereinafter defined) being hereinafter collectively referred to as the "Property"):

   (a) The real property located in the County of Lake, State of Illinois, as described in **Exhibit A** hereto, and commonly known as 845 Maplewood Road, Lake Forest, Illinois 60045 (the "Land");

   (b) All buildings, structures, improvements, fixtures and appurtenances now or hereafter placed on the Land, and all apparatus and equipment now or hereafter

-1-

3066482.1.25560.61877



attached in any manner to the Land or any building on the Land, including all pumping plants, engines, pipes, ditches and flumes, and also all gas, electric, cooking, heating, cooling, air conditioning, lighting, refrigeration and plumbing fixtures and equipment (collectively, the "Improvements");

(c)    All easements and rights of way appurtenant to the Land; all crops growing or to be grown on the Land (including all such crops following severance from the Land); all standing timber upon the Land (including all such timber following severance from the Land); all development rights or credits and air rights; all water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant to the Land) and shares of stock pertaining to such water or water rights, ownership of which affect the Land; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Land;

(d)    All existing and future leases, subleases, subtenancies, licenses, occupancy agreements and concessions relating to the use and enjoyment of all or any part of the Land or the Improvements, and any and all guaranties and other agreements relating to or made in connection with any of the foregoing;

(e)    All proceeds, including all claims to and demands for them, of the voluntary or involuntary conversion of any of the Land, Improvements, or the other property described above into cash or liquidated claims, including proceeds of all present and future fire, hazard or casualty insurance policies, whether or not such policies are required by Mortgagee, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Land, Improvements, or the other property described above or any part of them; and

(f)    All proceeds of, additions and accretions to, substitutions and replacements for, and changes in any of the property described above.

1.2    Fixture Filing.  This Mortgage constitutes a financing statement filed as a fixture filing under the Illinois Uniform Commercial Code, as amended or recodified from time to time, covering any Property which now is or later may become a fixture attached to the Land or any building located thereon.

## 2. THE SECURED OBLIGATIONS.

2.1    Purpose of Securing.  Mortgagor makes the grant, conveyance, transfer and assignment set forth in Section 1, makes the irrevocable and absolute assignment set forth in Section 3, and grants the security interest set forth in Section 4, all for the purpose of securing

the following obligations (the "Secured Obligations") in any order of priority that Mortgagee may choose:

        (a)   Payment of all obligations of Computer Power Systems, LLC, a Delaware limited liability company ("Borrower" or "Obligor") to Mortgagee arising under an U.S. Small Business Administration Note dated as of February 23, 2017, payable by Borrower, as maker, in the stated principal amount of Three Million Three Hundred Thirty Thousand and 00/100 Dollars ($3,330,000.00) to the order of Mortgagee, the terms of which are incorporated herein by reference ("Debt Instrument"). This Mortgage also secures payment of all obligations of Borrower under the Debt Instrument which arise after the Debt Instrument is extended, renewed, modified or amended pursuant to any written agreement between Borrower and Mortgagee, and all obligations of Borrower under any successor agreement or instrument which restates and supersedes the Debt Instrument in its entirety;

        (b)   Payment and performance of all obligations of Mortgagor under this Mortgage;

        (c)   Payment and performance of all future advances and other obligations that Mortgagor (or any successor in interest to Mortgagor) or Borrower (if different from Mortgagor) may agree to pay and/or perform (whether as principal, surety or guarantor) to or for the benefit of Mortgagee, when a writing signed by Mortgagor (or any successor in interest to Mortgagor) evidences said parties' agreement that such advance or obligation be secured by this Mortgage.

This Mortgage does not secure any obligation which expressly states that it is unsecured, whether contained in the foregoing Debt Instrument or in any other document, agreement or instrument. Unless specifically described in subparagraph (a) above or otherwise agreed in writing, "Secured Obligations" shall not include any debts, obligations or liabilities which are or may hereafter be "consumer credit" subject to the disclosure requirements of the Federal Truth in Lending law or any regulation promulgated thereunder.

Notwithstanding any provision to the contrary, "Secured Obligations" secured hereby shall not include obligations arising under any Swap Contract to the extent that the grant of a lien hereunder to secure such Swap Contract would violate the Commodity Exchange Act by virtue of the Mortgagor's failure to constitute an "eligible contract participant" as defined in the Commodity Exchange Act at the time such grant of such lien becomes effective with respect to such Swap Contract. "Commodity Exchange Act" means 7 U.S.C. Section 1 *et seq.,* as amended from time to time, any successor statute, and any rules, regulations and orders applicable thereto.

        2.2   <u>Terms of Secured Obligations</u>.  All persons who may have or acquire an interest in all or any part of the Property will be considered to have notice of, and will be bound by, the terms of the Debt Instrument described in Paragraph 2.1(a) and each other agreement or

instrument made or entered into in connection with each of the Secured Obligations. These terms include any provisions in the Debt Instrument which permit borrowing, repayment and reborrowing, or which provide that the interest rate on one or more of the Secured Obligations may vary from time to time.

2.3 <u>Maximum Amount Secured</u>. The maximum amount secured by the lien of this Mortgage is $6,660,000.00.

3. <u>ASSIGNMENT OF RENTS</u>.

3.1 <u>Assignment</u>. Mortgagor hereby irrevocably, absolutely, presently and unconditionally assigns to Mortgagee all rents, royalties, issues, profits, revenue, income and proceeds of the Property, whether now due, past due or to become due, including all prepaid rents and security deposits (collectively, the "Rents"), and confers upon Mortgagee the right to collect such Rents with or without taking possession of the Property. In the event that anyone establishes and exercises any right to develop, bore for or mine for any water, gas, oil or mineral on or under the surface of the Property, any sums that may become due and payable to Mortgagor as bonus or royalty payments, and any damages or other compensation payable to Mortgagor in connection with the exercise of any such rights, shall also be considered Rents assigned under this Paragraph. <u>THIS IS AN ABSOLUTE ASSIGNMENT, NOT AN ASSIGNMENT FOR SECURITY ONLY.</u>

3.2 <u>Grant of License</u>. Notwithstanding the provisions of Paragraph 3.1, Mortgagee hereby confers upon Mortgagor a license ("License") to collect and retain the Rents as they become due and payable, so long as no Event of Default, as defined in Paragraph 6.2, shall exist and be continuing. If an Event of Default has occurred and is continuing, Mortgagee shall have the right, which it may choose to exercise in its sole discretion, to terminate this License without notice to or demand upon Mortgagor, and without regard to the adequacy of the security for the Secured Obligations.

4. <u>SECURITY INTEREST IN RELATED PERSONALTY</u>.

4.1 <u>Grant of Security Interest</u>. Mortgagor grants to Mortgagee a security interest in, and pledges and assigns to Mortgagee, all of Mortgagor's right, title and interest, whether presently existing or hereafter acquired in and to all of the following property (collectively, the "Personalty"):

(a) All materials, supplies, goods, tools, furniture, fixtures, equipment, and machinery which in all cases is affixed or attached, or to be affixed or attached, in any manner on the Land or the Improvements;

(b) All crops growing or to be grown on the Land (and after severance from the Land); all standing timber upon the Land (and after severance from the Land);

3066482.1.25560.61877

all sewer, water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant to the Land) and all evidence of ownership rights pertaining to such water or water rights, ownership of which affect the Land; and all architectural and engineering plans, specifications and drawings which arise from or relate to the Land or the Improvements;

(c)  All permits, licenses and claims to or demands for the voluntary or involuntary conversion of any of the Land, Improvements, or other Property into cash or liquidated claims, proceeds of all present and future fire, hazard or casualty insurance policies relating to the Land and the Improvements, whether or not such policies are required by Mortgagee, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Land, Improvements, or other Property or any part of them;

(d)  All substitutions, replacements, additions, and accessions  to any of the above property, and all books, records and files relating to any of the above property, including, without limitation, all general intangibles related to any of the above property and all proceeds of the above property.

## 5. RIGHTS AND DUTIES OF THE PARTIES.

5.1  Representations and Warranties.  Mortgagor represents and warrants that Mortgagor lawfully possesses and holds fee simple title to all of the Land and the Improvements, unless Mortgagor's present interest in the Land and the Improvements is described in Exhibit A as a leasehold interest, in which case Mortgagor lawfully possesses and holds a leasehold interest in the Land and the Improvements as stated in Exhibit A.

5.2  Taxes, Assessments, Liens and Encumbrances.  Mortgagor shall pay prior to delinquency all taxes, levies, charges and assessments, including assessments on appurtenant water stock, imposed by any public or quasipublic authority or utility company which are (or if not paid, may become) a lien on all or part of the Property or any interest in it, or which may cause any decrease in the value of the Property or any part of it.  Mortgagor shall immediately discharge any lien on the Property which Mortgagee has not consented to in writing, and shall also pay when due each obligation secured by or reducible to a lien, charge or encumbrance which now or hereafter encumbers or appears to encumber all or part of the Property, whether the lien, charge or encumbrance is or would be senior or subordinate to this Mortgage.

5.3  Damages and Insurance and Condemnation Proceeds.

(a)  Mortgagor hereby absolutely and irrevocably assigns to Mortgagee, and authorizes the payor to pay to Mortgagee, the following claims, causes of action, awards, payments and rights to payment (collectively, the "Claims"):

(i) all awards of damages and all other compensation payable directly or indirectly because of a condemnation, proposed condemnation or taking for public or private use which affects all or part of the Property or any interest in it;

(ii) all other awards, claims and causes of action, arising out of any breach of warranty or misrepresentation affecting all or any part of the Property, or for damage or injury to, or defect in, or decrease in value of all or part of the Property or any interest in it;

(iii) all proceeds of any insurance policies payable because of loss sustained to all or part of the Property, whether or not such insurance policies are required by Mortgagee; and

(iv) all interest which may accrue on any of the foregoing.

(b) Mortgagor shall immediately notify Mortgagee in writing if:

(i) any damage occurs or any injury or loss is sustained to all or part of the Property, or any action or proceeding relating to any such damage, injury or loss is commenced; or

(ii) any offer is made, or any action or proceeding is commenced, which relates to any actual or proposed condemnation or taking of all or part of the Property.

If Mortgagee chooses to do so, it may in its own name appear in or prosecute any action or proceeding to enforce any cause of action based on breach of warranty or misrepresentation, or for damage or injury to, defect in, or decrease in value of all or part of the Property, and it may make any compromise or settlement of the action or proceeding. Mortgagee, if it so chooses, may participate in any action or proceeding relating to condemnation or taking of all or part of the Property, and may join Mortgagor in adjusting any loss covered by insurance.

(c) All proceeds of the Claims assigned to Mortgagee under this Paragraph shall be paid to Mortgagee. In each instance, Mortgagee shall apply those proceeds first toward reimbursement of all of Mortgagee's costs and expenses of recovering the proceeds, including attorneys' fees. Mortgagor further authorizes Mortgagee, at Mortgagee's option and in Mortgagee's sole discretion, and regardless of whether there is any impairment of the Property, (i) to apply the balance of such proceeds, or any portion of them, to pay or prepay some or all of the Secured Obligations in such order or proportion as Mortgagee may determine, or (ii) to hold the balance of

such proceeds, or any portion of them, in an interest-bearing account to be used for the cost of reconstruction, repair or alteration of the Property, or (iii) to release the balance of such proceeds, or any portion of them, to Mortgagor. If any proceeds are released to Mortgagor, Mortgagee shall not be obligated to see to, approve or supervise the proper application of such proceeds. If the proceeds are held by Mortgagee to be used to reimburse Mortgagor for the costs of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition, or such other condition as Mortgagee may approve in writing. Mortgagee may, at Mortgagee's option, condition disbursement of the proceeds on Mortgagee's approval of such plans and specifications prepared by an architect satisfactory to Mortgagee, contractor's cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and materialmen, and such other evidence of costs, percentage of completion of construction, application of payments, and satisfaction of liens as Mortgagee may reasonably require.

5.4 <u>Insurance</u>. Mortgagor shall provide and maintain in force at all times all risk property damage insurance (including without limitation windstorm coverage, and hurricane coverage as applicable) on the Property and such other type of insurance on the Property as may be required by Mortgagee in its reasonable judgment. At Mortgagee's request, Mortgagor shall provide Mortgagee with a counterpart original of any policy, together with a certificate of insurance setting forth the coverage, the limits of liability, the carrier, the policy number and the expiration date. Each such policy of insurance shall be in an amount, for a term, and in form and content satisfactory to Mortgagee, and shall be written only by companies approved by Mortgagee. In addition, each policy of hazard insurance shall include a Form 438BFU or equivalent loss payable endorsement in favor of Mortgagee. Unless Mortgagor provides evidence of the insurance coverage required by this Paragraph, Mortgagee may purchase insurance at Mortgagor's expense to protect Mortgagee's interest in the Property. This insurance may but need not, protect Mortgagor's interests. The coverage that Mortgagee purchases may not pay any claim that Mortgagor makes or any claim that is made against Mortgagor in connection with the Property. Mortgagor may later cancel any insurance purchased by Mortgagee, but only after providing evidence that Mortgagor has obtained insurance as required by this Paragraph. If Mortgagee purchases insurance for the Property, Mortgagor will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges Mortgagee may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to outstanding principal balance of the Secured Obligations. The costs of the insurance may be more than the cost of insurance Mortgagor may be able to obtain on its own.

5.5 <u>Maintenance and Preservation of Property</u>.

(a) Mortgagor shall keep the Property in good condition and repair and shall not commit or allow waste of the Property. Mortgagor shall not remove or demolish the Property or any part of it, or alter, restore or add to the Property, or initiate or allow

-7-

any change in any zoning or other land use classification which affects the Property or any part of it, except with Mortgagee's express prior written consent in each instance.

(b) If all or part of the Property becomes damaged or destroyed, Mortgagor shall promptly and completely repair and/or restore the Property in a good and workmanlike manner in accordance with sound building practices, regardless of whether or not Mortgagee agrees to disburse insurance proceeds or other sums to pay costs of the work of repair or reconstruction under Paragraph 5.3.

(c) Mortgagor shall not commit or allow any act upon or use of the Property which would violate any applicable law or order of any governmental authority, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property. Mortgagor shall not bring or keep any article on the Property or cause or allow any condition to exist on it, if that could invalidate or would be prohibited by any insurance coverage required to be maintained by Mortgagor on the Property or any part of it under this Mortgage.

(d) If Mortgagor's interest in the Property is a leasehold interest, Mortgagor shall observe and perform all obligations of Mortgagor under any lease or leases and shall refrain from taking any actions prohibited by any lease or leases. Mortgagor shall preserve and protect the leasehold estate and its value.

(e) If the Property is agricultural, Mortgagor shall farm the Property in a good and husbandlike manner. Mortgagor shall keep all trees, vines and crops on the Property properly cultivated, irrigated, fertilized, sprayed and fumigated, and shall replace all dead or unproductive trees or vines with new ones. Mortgagor shall prepare for harvest, harvest, remove and sell any crops growing on the Property. Mortgagor shall keep all buildings, fences, ditches, canals, wells and other farming improvements on the Property in first class condition, order and repair.

(f) Mortgagor shall perform all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value.

5.6    Releases, Extensions, Modifications and Additional Security.    Without affecting the personal liability of any person, including Mortgagor (or Borrower, if different from Mortgagor), for the payment of the Secured Obligations or the lien of this Mortgage on the remainder of the Property for the unpaid amount of the Secured Obligations, Mortgagee may from time to time and without notice:

(a) release any person liable for payment of any Secured Obligation;

-8-

(b)  extend the time for payment, or otherwise alter the terms of payment, of any Secured Obligation;

(c)  accept additional real or personal property of any kind as security for any Secured Obligation, whether evidenced by deeds of trust, mortgages, security agreements or any other instruments of security;

(d)  alter, substitute or release any property securing the Secured Obligations;

(e)  consent to the making of any plat or map of the Property or any part of it;

(f)  join in granting any easement or creating any restriction affecting the Property;

(g)  join in any subordination or other agreement affecting this Mortgage or the lien of it; or

(h)  release the Property or any part of it from the lien of this Mortgage.

5.7  Release.  When all of the Secured Obligations have been paid in full and no further commitment to extend credit continues, Mortgagee shall release the Property, or so much of it as is then held under this Mortgage, from the lien of this Mortgage.

5.8  Compensation and Reimbursement of Costs and Expenses.

(a)  Mortgagor agrees to pay fees in the maximum amounts legally permitted, or reasonable fees as may be charged by Mortgagee when the law provides no maximum limit, for any services that Mortgagee may render in connection with this Mortgage, including Mortgagee's providing a statement of the Secured Obligations. Mortgagor shall also pay or reimburse all of Mortgagee's costs and expenses which may be incurred in rendering any such services.

(b)  Mortgagor further agrees to pay or reimburse Mortgagee for all costs, expenses and other advances which may be incurred or made by Mortgagee to protect or preserve the Property or to enforce any terms of this Mortgage, including the exercise of any rights or remedies afforded to Mortgagee under Paragraph 6.3, whether any lawsuit is filed or not, or in defending any action or proceeding arising under or relating to this Mortgage, including attorneys' fees and other legal costs, costs of any sale of the Property and any cost of evidence of title.

3066482.1.25560.61877

(c)     Mortgagor shall pay all obligations arising under this Paragraph immediately upon demand by Mortgagee. Each such obligation shall be added to, and considered to be part of, the principal of the Secured Obligations, and shall bear interest from the date the obligation arises at the rate provided in any instrument or agreement evidencing the Secured Obligations. If more than one rate of interest is applicable to the Secured Obligations, the highest rate shall be used for purposes hereof.

5.9  Exculpation and Indemnification.

(a)     Mortgagee shall not be directly or indirectly liable to Mortgagor or any other person as a consequence of any of the following:

(i)     Mortgagee's exercise of or failure to exercise any rights, remedies or powers granted to it in this Mortgage;

(ii)    Mortgagee's failure or refusal to perform or discharge any obligation or liability of Mortgagor under any agreement related to the Property or under this Mortgage;

(iii)   Mortgagee's failure to produce Rents from the Property or to perform any of the obligations of the lessor under any lease covering the Property;

(iv)    any waste committed by lessees of the Property or any other parties, or any dangerous or defective condition of the Property; or

(v)     any loss sustained by Mortgagor or any third party resulting from any act or omission of Mortgagee in operating or managing the Property upon exercise of the rights or remedies afforded Mortgagee under Paragraph 6.3, unless the loss is caused by the willful misconduct and bad faith of Mortgagee.

Mortgagor hereby expressly waives and releases all liability of the types described above, and agrees that no such liability shall be asserted against or imposed upon Mortgagee.

(b)     Mortgagor agrees to indemnify Mortgagee against and hold Mortgagee harmless from all losses, damages, liabilities, claims, causes of action, judgments, court costs, attorneys' fees and other legal expenses, cost of evidence of title, cost of evidence of value, and other costs and expenses which Mortgagee may suffer or incur in performing any act required or permitted by this Mortgage or by law or because of any failure of Mortgagor to perform any of its obligations. This agreement by Mortgagor to indemnify Mortgagee shall survive the release and cancellation of any or all of the Secured Obligations and the full or partial release of this Mortgage.

3066482.1.25560.61877

5.10    Defense and Notice of Claims and Actions.  At Mortgagor's sole expense, Mortgagor shall protect, preserve and defend the Property and title to and right of possession of the Property, and the security of this Mortgage and the rights and powers of Mortgagee created under it, against all adverse claims.  Mortgagor shall give Mortgagee prompt notice in writing if any claim is asserted which does or could affect any of these matters, or if any action or proceeding is commenced which alleges or relates to any such claim.

5.11    Representation and Warranty Regarding Hazardous Substances.  Before signing this Mortgage, Mortgagor researched and inquired into the previous uses and ownership of the Property.  Based on that due diligence, Mortgagor represents and warrants that to the best of its knowledge, no hazardous substance has been disposed of or released or otherwise exists in, on, under or onto the Property, except as Mortgagor has disclosed to Mortgagee in writing. Mortgagor further represents and warrants that Mortgagor has complied, and will comply and cause all occupants of the Property to comply, with all current and future laws, regulations and ordinances or other requirements of any governmental authority relating to or imposing liability or standards of conduct concerning protection of health or the environment or hazardous substances ("Environmental Laws").  Mortgagor shall promptly, at Mortgagor's sole cost and expense, take all reasonable actions with respect to any hazardous substances or other environmental condition at, on, or under the Property necessary to (i) comply with all applicable Environmental Laws; (ii) allow continued use, occupation or operation of the Property; or (iii) maintain the fair market value of the Property.  Mortgagor acknowledges that hazardous substances may permanently and materially impair the value and use of the Property. "Hazardous substance" means any substance, material or waste that is or becomes designated or regulated as "toxic," "hazardous," "pollutant," or "contaminant" or a similar designation or regulation under any current or future federal, state or local law (whether under common law, statute, regulation or otherwise) or judicial or administrative interpretation of such, including without limitation petroleum or natural gas.

5.12    Site Visits, Observation and Testing.  Mortgagee and its agents and representatives shall have the right at any reasonable time, after giving reasonable notice to Mortgagor, to enter and visit the Property for the purposes of performing appraisals, observing the Property, taking and removing environmental samples, and conducting tests on any part of the Property.  Mortgagor shall reimburse Mortgagee on demand for the costs of any such environmental investigation and testing.  Mortgagee will make reasonable efforts during any site visit, observation or testing conducted pursuant this Paragraph to avoid interfering with Mortgagor's use of the Property.  Mortgagee is under no duty, however, to visit or observe the Property or to conduct tests, and any such acts by Mortgagee will be solely for the purposes of protecting Mortgagee's security and preserving Mortgagee's rights under this Mortgage.  No site visit, observation or testing or any report or findings made as a result thereof ("Environmental Report") (i) will result in a waiver of any default of Mortgagor; (ii) impose any liability on Mortgagee; or (iii) be a representation or warranty of any kind regarding the Property (including its condition or value or compliance with any laws) or the Environmental Report (including its accuracy or completeness).  In the event Mortgagee has a duty or obligation under applicable

3066482.1.25560.61877

laws, regulations or other requirements to disclose an Environmental Report to Mortgagor or any other party, Mortgagor authorizes Mortgagee to make such a disclosure. Mortgagee may also disclose an Environmental Report to any regulatory authority, and to any other parties as necessary or appropriate in Mortgagee's judgment. Mortgagor further understands and agrees that any Environmental Report or other information regarding a site visit, observation or testing that is disclosed to Mortgagor by Mortgagee or its agents and representatives is to be evaluated (including any reporting or other disclosure obligations of Mortgagor) by Mortgagor without advice or assistance from Mortgagee.

      5.13 <u>Intentionally Deleted</u>.

6. <u>ACCELERATING TRANSFERS, DEFAULT AND REMEDIES</u>.

      6.1 <u>Accelerating Transfers</u>

      (a) "Accelerating Transfer" means any sale, contract to sell, conveyance, encumbrance, or other transfer, whether voluntary, involuntary, by operation of law or otherwise, of all or any material part of the Property or any interest in it, including any transfer or exercise of any right to drill for or to extract any water (other than for Mortgagor's own use), oil, gas or other hydrocarbon substances or any mineral of any kind on or under the surface of the Property. If Mortgagor is a corporation, "Accelerating Transfer" also means any transfer or transfers of shares possessing, in the aggregate, more than fifty percent (50%) of the voting power. If Mortgagor is a partnership, "Accelerating Transfer" also means withdrawal or removal of any general partner, dissolution of the partnership under applicable law, or any transfer or transfers of, in the aggregate, more than fifty percent (50%) of the partnership interests. If Mortgagor is a limited liability company, "Accelerating Transfer" also means withdrawal or removal of any managing member, termination of the limited liability company or any transfer or transfers of, in the aggregate, more than fifty percent (50%) of the voting power or in the aggregate more than fifty percent of the ownership of the economic interest in the Mortgagor.

      (b) Mortgagor agrees that Mortgagor shall not make any Accelerating Transfer, unless the transfer is preceded by Mortgagee's express written consent to the particular transaction and transferee. Mortgagee may withhold such consent in its sole discretion. If any Accelerating Transfer occurs, Mortgagee in its sole discretion may declare all of the Secured Obligations to be immediately due and payable, and Mortgagee may invoke any rights and remedies provided by Paragraph 6.3 of this Mortgage.

      6.2 <u>Events of Default</u>. The occurrence of any one or more of the following events, at the option of Mortgagee, shall constitute an event of default ("Event of Default") under this Mortgage:

3066482.1.25560.61877

(a)    Borrower fails to make any payment, when due, under the Debt Instrument (after giving effect to any applicable grace period), or any other default occurs under and as defined in the Debt Instrument or in any other instrument or agreement evidencing any of the Secured Obligations and such default continues beyond any applicable cure period;

(b) Mortgagor fails to make any payment or perform any obligation which arises under this Mortgage;

(c)    Mortgagor makes or permits the occurrence of an Accelerating Transfer in violation of Paragraph 6.1;

(d)    Any representation or warranty made in connection with this Mortgage or the Secured Obligations proves to have been false or misleading in any material respect when made;

(e) Any default occurs under any other mortgage on all or any part of the Property, or under any obligation secured by such mortgage, whether such mortgage is prior to or subordinate to this Mortgage; or

(f)    An event occurs which gives Mortgagee the right or option to terminate any Swap Contract secured by this Mortgage.

6.3    <u>Remedies</u>.    At any time after the occurrence of an Event of Default, Mortgagee shall be entitled to invoke any and all of the rights and remedies described below, as well as any other rights and remedies authorized by law. All of such rights and remedies shall be cumulative, and the exercise of any one or more of them shall not constitute an election of remedies.

(a) Mortgagee may declare any or all of the Secured Obligations to be due and payable immediately, and may terminate any Swap Contract secured by this Mortgage in accordance with its terms.

(b)    Mortgagee may apply to any court of competent jurisdiction for, and obtain appointment of, a receiver for the Property.

(c)    Mortgagee, in person, by agent or by court-appointed receiver, may enter, take possession of, manage and operate all or any part of the Property, and in its own name or in the name of Mortgagor sue for or otherwise collect any and all Rents, including those that are past due, and may also do any and all other things in connection with those actions that Mortgagee may in its sole discretion consider necessary and appropriate to protect the security of this Mortgage.    Such other things may include: entering into, enforcing, modifying, or canceling leases on such terms and conditions as

-13-

Mortgagee may consider proper; obtaining and evicting tenants; fixing or modifying Rents; completing any unfinished construction; contracting for and making repairs and alterations; performing such acts of cultivation or irrigation as necessary to conserve the value of the Property; and preparing for harvest, harvesting and selling any crops that may be growing on the property. Mortgagor hereby irrevocably constitutes and appoints Mortgagee as its attorneyinfact to perform such acts and execute such documents as Mortgagee in its sole discretion may consider to be appropriate in connection with taking these measures, including endorsement of Mortgagor's name on any instruments. Mortgagor agrees to deliver to Mortgagee all books and records pertaining to the Property, including computer-readable memory and any computer hardware or software necessary to access or process such memory, as may reasonably be requested by Mortgagee in order to enable Mortgagee to exercise its rights under this Paragraph.

(d)  Mortgagee may cure any breach or default of Mortgagor, and if it chooses to do so in connection with any such cure, Mortgagee may also enter the Property and/or do any and all other things which it may in its sole discretion consider necessary and appropriate to protect the security of this Mortgage. Such other things may include: appearing in and/or defending any action or proceeding which purports to affect the security of, or the rights or powers of Mortgagee under, this Mortgage; paying, purchasing, contesting or compromising any encumbrance, charge, lien or claim of lien which in Mortgagee's sole judgment is or may be senior in priority to this Mortgage, such judgment of Mortgagee to be conclusive as among the parties to this Mortgage; obtaining insurance and/or paying any premiums or charges for insurance required to be carried under this Mortgage; otherwise caring for and protecting any and all of the Property; and/ or employing counsel, accountants, contractors and other appropriate persons to assist Mortgagee. Mortgagee may take any of the actions permitted hereunder either with or without giving notice to any person.

(e)  Mortgagee may bring an action in any court of competent jurisdiction to foreclose this instrument or to obtain specific enforcement of any of the covenants or agreements of this Mortgage.

(f)  Mortgagee may exercise the remedies contained in the Debt Instrument or in any other instrument or agreement evidencing any of the Secured Obligations.

(g)  Mortgagee may proceed under the Uniform Commercial Code as to all or any part of the Personalty, and in conjunction therewith may exercise all of the rights, remedies and powers of a secured creditor under the Uniform Commercial Code. When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Mortgagee may sell the Personalty at a public sale to be held at the time and place specified in the notice of sale. It shall be deemed

commercially reasonable for the Mortgagee to dispose of the Personalty without giving any warranties as to the Personalty and specifically disclaiming all disposition warranties.

(h)  If any provision of this Mortgage is inconsistent with any applicable provision of the Illinois Mortgage Foreclosure Law, Illinois Compiled Statutes Chapter 735, Section 5/15-1101 et seq. (the "Illinois Act"), the provisions of the Illinois Act shall take precedence over the provisions of this Mortgage, but shall not invalidate or render unenforceable any other provision of this Mortgage that can fairly be construed in a manner consistent with the Illinois Act.

(i)  Without in any way limiting or restricting any of the Mortgagee's rights, remedies, powers and authorities under this Mortgage, and in addition to all of such rights, remedies, powers, and authorities, the Mortgagee shall also have and may exercise any and all rights, remedies, powers and authorities which the holder of a mortgage is permitted to have or exercise under the provisions of the Illinois Act, as the same may be amended from time to time. If any provision of this Mortgage shall grant to the Mortgagee any rights, remedies, powers or authorities upon default of Mortgagor which are more limited than the rights that would otherwise be vested in the Mortgagee under the Illinois Act in the absence of said provision, the Mortgagee shall be vested with all of the rights, remedies, powers and authorities granted in the Illinois Act to the fullest extent permitted by law.

(j)  Without limiting the generality of the foregoing, all expenses incurred by the Mortgagee, to the extent reimbursable, under Sections 5/15-1510, 5/15-1512, or any other provision of the Illinois Act, whether incurred before or after any decree or judgment of foreclosure, and whether or not enumerated in any other provision of this Mortgage, shall be added to the indebtedness secured by this Mortgage and by the judgment of foreclosure.

(k)  Mortgagor waives, to the extent permitted by law, (a) the benefit of all laws now existing or that may hereafter be enacted providing for any appraisement before sale of any portion of the Property, (b) all  rights of reinstatement, redemption, valuation, appraisement, homestead, moratorium, exemption, extension, stay of execution, notice of election to mature or declare due the whole of the Secured Obligations in the event of foreclosure of the liens hereby created, (c) all rights and remedies which Mortgagor may have or be able to assert by reason of the laws of the State of Illinois pertaining to the rights and remedies of sureties, (d) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Mortgage or to any action brought to enforce the Debt Instrument or any other Secured Obligations, and (e) any rights, legal or equitable, to require marshaling of assets or to require foreclosure sales in a particular order. Without limiting the generality of the preceding sentence, Mortgagor, on its own behalf and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date of this Mortgage, hereby irrevocably waives any and all rights of

-15-

reinstatement or redemption from sale or from or under any order, judgment or decree of foreclosure of this Mortgage or under any power contained herein or under any sale pursuant to any statute, order, decree or judgment of any court. Mortgagor, for itself and for all persons hereafter claiming through or under it or who may at any time hereafter become holders of liens junior to the lien of this Mortgage, hereby expressly waives and releases all rights to direct the order in which any of the Property shall be sold in the event of any sale or sales pursuant hereto and to have any of the Property and/or any other property now or hereafter constituting security for any of the indebtedness secured hereby marshaled upon any foreclosure of this Mortgage or of any other security for any of said indebtedness. The Mortgagee shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. The Mortgagee shall have the right to determine the order in which any or all portions of the Secured Obligations are satisfied from the proceeds realized upon the exercise of the remedies provided herein.

6.4 Application of Sale Proceeds and Rents.

(a) Mortgagee shall apply the proceeds of any sale of the Property in the following manner: first, to pay the portion of the Secured Obligations attributable to the costs, fees and expenses of the sale, including costs of evidence of title in connection with the sale; and, second, to pay all other Secured Obligations in any order and proportions as Mortgagee in its sole discretion may choose. The remainder, if any, shall be remitted to the person or persons entitled thereto.

(b) Mortgagee shall apply any and all Rents collected by it, and any and all sums other than proceeds of any sale of the Property which Mortgagee may receive or collect under Paragraph 6.3, in the following manner: first, to pay the portion of the Secured Obligations attributable to the costs and expenses of operation and collection that may be incurred by Mortgagee or any receiver; and, second, to pay all other Secured Obligations in any order and proportions as Mortgagee in its sole discretion may choose. The remainder, if any, shall be remitted to the person or persons entitled thereto. Mortgagee shall have no liability for any funds which it does not actually receive.

7. MISCELLANEOUS PROVISIONS

7.1 No Waiver or Cure.

(a) Each waiver by Mortgagee must be in writing, and no waiver shall be construed as a continuing waiver. No waiver shall be implied from any delay or failure by Mortgagee to take action on account of any default of Mortgagor. Consent by Mortgagee to any act or omission by Mortgagor shall not be construed as a consent to any other or subsequent act or omission or to waive the requirement for Mortgagee's consent to be obtained in any future or other instance.

3066482.1.25560.61877

(b)   If any of the events described below occurs, that event alone shall not cure or waive any breach, Event of Default or notice of default under this Mortgage or invalidate any act performed pursuant to any such default or notice; or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed); or impair the security of this Mortgage; or prejudice Mortgagee or any receiver in the exercise of any right or remedy afforded any of them under this Mortgage; or be construed as an affirmation by Mortgagee of any tenancy, lease or option, or a subordination of the lien of this Mortgage:

(i)   Mortgagee, its agent or a receiver takes possession of all or any part of the Property;

(ii)   Mortgagee collects and applies Rents, either with or without taking possession of all or any part of the Property;

(iii)   Mortgagee receives and applies to any Secured Obligation proceeds of any Property, including any proceeds of insurance policies, condemnation awards, or other claims, property or rights assigned to Mortgagee under this Mortgage;

(iv)   Mortgagee makes a site visit, observes the Property and/or conducts tests thereon;

(v)   Mortgagee receives any sums under this Mortgage or any proceeds of any collateral held for any of the Secured Obligations, and applies them to one or more Secured Obligations;

(vi)   Mortgagee or any receiver performs any act which it is empowered or authorized to perform under this Mortgage or invokes any right or remedy provided under this Mortgage.

7.2   Powers of Mortgagee.   Mortgagee may take any of the actions permitted under Paragraphs 6.3(b) and/or 6.3(c) regardless of the adequacy of the security for the Secured Obligations, or whether any or all of the Secured Obligations have been declared to be immediately due and payable, or whether notice of default and election to sell has been given under this Mortgage.

7.3   Nonborrower Mortgagor.

(a)   If any Mortgagor ("Nonborrower Mortgagor") is not the Borrower under the Debt Instrument described in Paragraph 2.1(a), such Nonborrower Mortgagor authorizes Mortgagee to perform any of the following acts at any time, all without notice

-17-

to Nonborrower Mortgagor and without affecting Mortgagee's rights or Nonborrower Mortgagor's obligations under this Mortgage:

(i)   Mortgagee may alter any terms of the Debt Instrument or any part of it, including renewing, compromising, extending or accelerating, or otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the Debt Instrument or any part of it;

(ii)   Mortgagee may take and hold security for the Debt Instrument, accept additional or substituted security for the Debt Instrument, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect, sell or otherwise dispose of any such security;

(iii)   Mortgagee may apply any security now or later held for the Debt Instrument in any order that Mortgagee in its sole discretion may choose, and may direct the order and manner of any sale of all or any part of it and bid at any such sale;

(iv)   Mortgagee may release Borrower of its liability for the Debt Instrument or any part of it;

(v)   Mortgagee may substitute, add or release any one or more guarantors or endorsers of the Debt Instrument; and

(vi)   Mortgagee may extend other credit to Borrower, and may take and hold security for the credit so extended, whether or not such security also secures the Debt Instrument.

(b)   Nonborrower Mortgagor waives:

(i)   Any right it may have to require Mortgagee to proceed against Borrower, proceed against or exhaust any security held from Borrower, or pursue any other remedy in Mortgagee's power to pursue;

(ii)   Any defense based on any legal disability of Borrower, any discharge or limitation of the liability of Borrower to Mortgagee, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtorrelief proceeding, or from any other cause, or any claim that Nonborrower Mortgagor's obligations exceed or are more burdensome than those of Borrower;

(iii)   All presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of

3066482.1.25560.61877

acceptance of this Mortgage and of the existence, creation, or incurring of new or additional indebtedness of Borrower, and demands and notices of every kind;

(iv)   Any defense based on or arising out of any defense that Borrower may have to the payment or performance of the Debt Instrument or any part of it; and

(v)  Until the Secured Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute, all rights to enforce any remedy that the Mortgagee may have against Borrower, and all rights to participate in any security now or later to be held by Mortgagee for the Debt Instrument.

(c)   Nonborrower Mortgagor assumes full responsibility for keeping informed of Borrower's financial condition and business operations and all other circumstances affecting Borrower's ability to pay and perform its obligations to Mortgagee, and agrees that Mortgagee shall have no duty to disclose to Nonborrower Mortgagor any information which Mortgagee may receive about Borrower's financial condition, business operations, or any other circumstances bearing on its ability to perform.

(d)  No provision or waiver in this Mortgage shall be construed as limiting the generality of any other provision or waiver contained in this Mortgage.

(e)   For purposes of this Paragraph 7.3, all references to the Debt Instrument shall also include any instrument or agreement executed by Borrower subsequent to the date of this Mortgage which is secured by this Mortgage in accordance with the provisions of Paragraphs 2.1(c) and 2.1(d).

7.4  Merger.  No merger shall occur as a result of Mortgagee's acquiring any other estate in or any other lien on the Property unless Mortgagee consents to a merger in writing.

7.5  Joint and Several Liability.  If Mortgagor consists of more than one person, each shall be jointly and severally liable for the faithful performance of all of Mortgagor's obligations under this Mortgage.

7.6  Applicable Law.  This Mortgage shall be governed by the laws of the State of Illinois.

7.7 <u>Successors in Interest</u>. The terms, covenants and conditions of this Mortgage shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties. However, this Paragraph does not waive the provisions of Paragraph 6.1.

**7.8 <u>SERVICE OF PROCESS</u>. THE MORTGAGOR WAIVES PERSONAL SERVICE OF PROCESS UPON THE MORTGAGOR, AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO THE MORTGAGOR AT THE ADDRESS STATED ON THE SIGNATURE PAGE HEREOF AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.**

**7.9 <u>Waiver of Jury Trial</u>. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS MORTGAGE OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION HEREWITH OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). MORTGAGOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST MORTGAGEE OR ANY OTHER PERSON INDEMNIFIED UNDER THIS MORTGAGE ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES. EACH PARTY HERETO (a) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (b) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS MORTGAGE AND THE OTHER DOCUMENTS CONTEMPLATED HEREBY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION AND (c) CERTIFIES THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE.**

7.10 <u>Interpretation</u>. Whenever the context requires, all words used in the singular will be construed to have been used in the plural, and vice versa, and each gender will include any other gender. The captions of the sections of this Mortgage are for convenience only and do not define or limit any terms or provisions. The word "include(s)" means "include(s), without limitation," and the word "including" means "including, but not limited to." The word "obligations" is used in its broadest and most comprehensive sense, and includes all primary, secondary, direct, indirect, fixed and contingent obligations. It further includes all principal, interest, prepayment charges, late charges, loan fees and any other fees and charges accruing or assessed at any time, as well as all obligations to perform acts or satisfy conditions. No listing of specific instances, items or matters in any way limits the scope or generality of any language of this Mortgage. The Exhibits to this Mortgage are hereby incorporated in this Mortgage.

7.11 <u>InHouse Counsel Fees</u>. Whenever Mortgagor is obligated to pay or reimburse Mortgagee for any attorneys' fees, those fees shall include the allocated costs for services of inhouse counsel to the extent permitted by applicable law.

7.12 <u>Waiver of Marshaling</u>. Mortgagor waives all rights, legal and equitable, it may now or hereafter have to require marshaling of assets or to direct the order in which any of the Property will be sold in the event of any sale under this Mortgage. Each successor and assign of Mortgagor, including any holder of a lien subordinate to this Mortgage, by acceptance of its interest or lien agrees that it shall be bound by the above waiver, as if it had given the waiver itself.

7.13 <u>Waiver of Homestead</u>. Mortgagor hereby abandons and waives all claims of homestead on the Property and does hereby forever release and discharge the Property from any and all claims of homestead.

7.14 <u>Severability</u>. If any provision of this Mortgage should be held unenforceable or void, that provision shall be deemed severable from the remaining provisions and in no way affect the validity of this Mortgage except that if such provision relates to the payment of any monetary sum, then Mortgagee may, at its option, declare all Secured Obligations immediately due and payable.

7.15 <u>Notices</u>. Mortgagor hereby requests that a copy of notice of default and notice of sale be mailed to it at the address set forth below. That address is also the mailing address of Mortgagor as debtor under the Uniform Commercial Code. Mortgagee's address given below is the address for Mortgagee as secured party under the Uniform Commercial Code.

Addresses for Notices to Mortgagor:

Mark Allen
Denise A. Campbell
845 Maplewood Road
Lake Forest, Illinois 60045

Address for Notices to Mortgagee:

CenTrust Bank, National Association
385 Waukegan Road
Northbrook, Illinois 60062
Attention: Tom Meyer

7.16 <u>Business Loan</u>. Mortgagor stipulates, represents, warrants, affirms and agrees that each of the loans and other obligations secured hereby constitute a "business loan" within the meaning of the Illinois Compiled Statutes, Chapter 815, Sections 205/4(a) or (c), as amended.

-21-

7.17 <u>No Property Manager Lien</u>. Any property management agreement for or relating to all or any part of the Property, whether now in effect or entered into hereafter by Mortgagor or on behalf of Mortgagor, shall contain a subordination provision whereby the property manager forever and unconditionally subordinates to the lien of this Mortgage any and all mechanic's lien rights and claims that it or anyone claiming through or under it may have at any time pursuant to any statute or law, including, without limitation, Illinois Compiled Statutes, Chapter 770, Section 60/1 ), as amended. Such property management agreement or a short form thereof, including such subordination, shall, at the Mortgagee's request, be recorded with the office of the recorder of deeds for the county in which the Property is located. Mortgagor's failure to cause any of the foregoing to occur shall constitute an Event of Default under this Mortgage.

7.18 <u>SBA Loan</u>. The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

(a) When SBA is the holder of the Debt Instruments, this document and all documents evidencing or securing the Loan will be construed in accordance with federal law.

(b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. Neither the Borrower nor any guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

(c) Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Debt Instruments secured by this instrument.

*Remainder of page left blank intentionally – signature page to follow.*

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage as of the date first above written.

MORTGAGOR:

_____
MARK ALLEN, individually

_____
DENISE A. CAMPBELL, individually

STATE OF __Illinois__ )
                           ) SS.
COUNTY OF __Lake__ )

I, __Jacqueline Ramirez-Martinez__, a notary public in and for said County, in the State aforesaid, do hereby certify that Mark Allen, an individual, and Denise A. Campbell, an individual, and the same persons whose names re subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that they signed, sealed and delivered the said instrument as their free and voluntary act, and as the free and voluntary act of said entity, for the uses and purposes therein set forth.

Given under my hand and official seal this 27th day of July, 2019.

Notary Public

Commission expires: 03-06-2022

OFFICIAL SEAL
JACQUELINE RAMIREZ-MARTINEZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/06/22

-24-

3066482.1.25560.61877

## EXHIBIT A TO MORTGAGE

Exhibit A to MORTGAGE dated as of the date aforesaid, given by Mark Allen and Denise A. Campbell, husband and wife, as "Mortgagor", to CenTrust Bank, National Association, as "Mortgagee."

### Description of Property

LOT 4 IN FOREST PARK, BEING A SUBDIVISION OF PART OF LOT 254 AND LOT 257 IN THE CITY OF LAKE FOREST, IN THE SOUTHWEST 1/4 OF SECTION 34, TOWNSHIP 44 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JUNE 14, 1924 AS DOCUMENT 241368, IN BOOK "N" OF PLATS, PAGE 11, IN LAKE COUNTY, ILLINOIS.

Commonly known as:          845 Maplewood Road, Lake Forest, Illinois 60045

PIN #:                              12-34-305-0001

3066482.1.25560.61877

# Exhibit I

*SENT VIA FEDERAL EXPRESS AND EMAIL*



Friday, February 10, 2023

Mark Allen
736 N Western Ave
Lake Forest, IL 60045

RE:                         CenTrust Bank (the Lender); Computer Power Systems, LLC (the Borrower)
                                  SBA Loan No. 91853950-10

---

Dear Sir:

Reference is made to the Note dated Thursday, February 23 2017 by and between Borrower and Lender in the original principal amount of $3,330,000 (the Loan).

The Loan Agreement, Note, Security Agreement, Pledge Agreement, Guarantee, and the Authorization, together with all agreements, documents and instruments required or contemplated by the Loan Agreement, the Note, the Security Agreement, the Pledge Agreement, the Guarantee, the Authorization and all extensions, amendments and modifications thereof, shall collectively be referred to as the "Documents".

Hereinafter, Borrower and Guarantor(s) may be referred to collectively as the "Obligors."

**NOTICE IS HEREBY GIVEN THAT AN EVENT OF DEFAULT HAS OCCURRED AND CURRENTLY EXISTS IN ACCORDANCE TO THE REPAYMENT TERMS OF THE NOTE AS A RESULT OF NON-PAYMENT. CONSEQUENTLY, THE LENDER IS DEMANDING THE NOTE AND PAYMENT THROUGH Friday, February 10 2023 IS DUE IMMEDIATELY.**

The outstanding balance of the loan as of Friday, February 10 2023 is:

| | | |
|---|---|---|
| Principal Balance: | $ | 1,976,001.69 |
| Approximate Interest to: | $ | 47,532.32 |
| Late Fees: | $ | - |
| Total Balance: | $ | 2,023,534.01 |

**AMOUNT OWED TO CURE PAYMENT DEFAULT: $85,462.00.**

Additionally, interest continues to accrue at the per diem interest rate of $554.90

There may be other Events of Default not listed in this letter. Failure by Lender to list any such Event of Default in this letter shall not be deemed a waiver of any such Event of Default.

**Demand is hereby made upon Obligor(s) to provide current payment through Friday, February 10 2023 on the Loan within (5) business days from date of this Demand Letter.**

Unless the above stated Default is cured within the time frame stated herein, Lender may enforce all of its rights, remedies and powers pursuant to (1) the Documents, (2) any other agreement, document or instrument by and among Lender on the one hand, and Borrower on the other hand, or given, transferred or assigned by Borrower to Lender, and (3) applicable law, all of which rights, remedies and powers are expressly reserved by Lender.

Please be advised that notwithstanding anything contained in this letter, this letter (1) does not in any manner constitute any waiver of either (a) any of Lender's rights, remedies and powers pursuant to (i) the Documents and (ii) any other agreement, document or instrument by and among Lender on the one hand and Borrower and Guarantor on the other hand, or given, transferred or assigned by Borrower or Guarantor to Lender; or (b) any default or event of default (howsoever such terms are defined) under the Documents and/or any other applicable agreement, document or instrument; or (2) is not to be construed as an agreement by Lender to allow any cure periods at a later date not specifically provided for in the Documents or any other applicable agreement, document or instrument.

Sincerely,

**Tom Meyer**
**CenTrust Bank**
**385 Waukegan Road**
**Northbrook IL**

Exhibit J

## BP | BROTSCHUL POTTS LLC

April 5, 2023

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
Computer Power Systems, LLC
1355 Wilhelm Road
Mundelein, IL 60060

Computer Power Systems, LLC
c/o Mark W. Allen, Reg. Agent
170 Commerce Drive
Grayslake, IL 60030

Akston CPS, LLC
c/o Harvard Business Services, Inc., Reg. Agent
16192 Coastal Hwy
Lewes, DE 19958

Denise Ann Campbell & Mark W. Allen
845 Maplewood Road
Lake Forest, Illinois 60045

**VIA FEDEX AND EMAIL**
Mark Allen & Denise A. Campbell
70 Stone Fence Rd.
Bernardsville, NJ 07924
mark.allen@4cps.com

Denise A. Campbell
Novartis Pharmaceuticals
One Health Plaza
East Hanover, NJ 07936-1080
denise.campbell@comcast.net

Re:     Loan Agreement dated Thursday, February 23, 2017 by and
        between Computer Power Systems, LLC ("Borrower") and Centrust
        Bank, National Association ("Lender") in the original principal
        amount of $3,330,000 (the "Loan Agreement"), as supplemented by
        a Post-Closing Agreement dated February 23, 2017 by and between
        the Borrower and Lender (the "Post-Closing Agreement"); an
        Equipment and Fixture Certification granted by the Borrower dated
        February 23, 2017 (the "Equipment and Fixture Certification"); a
        Gap Insurance Indemnity Agreement (the "GAP Agreement"); an
        Affidavit of Title Insurance for a 1-4 Family Residence, dated

# BP | BROTSCHUL POTTS LLC

February 23, 2017 executed by Denise A. Campbell and Mark W. Allen (the "Affidavit of Title Insurance"); a Fee Disclosure Form and Compensation Agreement by and between Computer Power Systems, LLC, Windsor Advantage, LLC, and Lender dated February 23, 2017 (the "Windsor Compensation Agreement"); as well as that certain additional Fee Disclosure Form and Compensation Agreement by and between Computer Power Systems, LLC and Lender dated February 23, 2017 (the "Agentless Compensation Agreement"); subject to that certain Errors and Omissions / Compliance Agreement by and between Borrower, Lender, and Guarantors dated February 23, 2017 (the "Errors and Omissions Agreement"); a Subordination Agreement by and between Lender and Lender, dated February 23, 2017 (the "Subordination Agreement"), and as amended by that certain Standby Creditor's Agreement by and between Borrower and Computer Power Systems, Inc., an Illinois Corporation, dated February 14, 2017 (the "Standby Creditor's Agreement"); as well as the U.S. Small Business Administration Note dated February 23, 2017 by and between Borrower and Lender (the "Note"), guaranteed by Akston CPS, LLC pursuant to Unconditional Guarantee dated February 23, 2017 (the "Akston Guaranty"), guaranteed by Denise A. Campbell, individually, pursuant to Unconditional Guarantee dated February 23, 2017 (the "Campbell Guaranty") and guaranteed by Mark W. Allen, individually, pursuant to Unconditional Guarantee dated February 23, 2017 (the "Allen Guaranty"); as well as the Security Agreement dated February 23, 2017 by and between the Borrower and Lender (the "Security Agreement"); and the Mortgage and Assignment of Rents dated July 27, 2019 by and between Guarantors and the Lender (the "Mortgage") (all above referenced agreements collectively, the "Loan"). (The Loan Agreement, Note, Security Agreement, Post-Closing Agreement, Equipment and Fixture Certification, GAP Agreement, Affidavit of Title Insurance, Windsor Compensation Agreement, Agentless Compensation Agreement, Errors and Omissions Agreement, Subordination Agreement, Standby Creditor's Agreement, the Note, the Security Agreement, the Akston Guaranty, Campbell Guaranty, Allen Guaranty, and all extensions, amendments and modifications thereof, shall collectively be referred to as the "Loan Documents.")

Borrower and Guarantors:

As you are aware, this office is counsel to Lender with respect to the Loan. The Loan is in default by virtue of action or inaction by you as Borrower and Guarantors. As such, this letter shall serve as your notice that Lender has declared Borrower and all Guarantors to be in default of the Loan Documents. As a result, this letter reaffirms the Lender's demand for payment of the Loan in full. Moreover, the Lender further reaffirms its demand for the immediate surrender and

# BP | BROTSCHUL POTTS LLC

turnover of all collateral securing the Lender's Security Agreement and Loan Documents relative to the Loan, including but not limited to that collateral described in <u>Exhibit "A"</u> of this correspondence.

Furthermore, Lender demands that Borrower and Guarantors immediately notify all accounts receivable of Lender's demand to ensure that all monies due and owing are paid directly to Lender. To ensure compliance, Lender will begin independently requesting the same from all parties. To coordinate compliance with Lender's requests, please contact my office.

Again, if peaceful turnover of the collateral is not made or the Loan is not immediately paid in full, Lender will pursue such legal action to repossess the collateral as Lender deems appropriate. Such action will result in additional fees, including attorney fees, being added to the total amount due, the loss of ownership with regards to your collateral and a negative credit rating.

As required by law, you are hereby notified that we may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

Your attention to this matter is again strongly recommended.

Very truly yours,

J. Ryan Potts

ATTM:        Exhibit A, A/R

**B**P | BROTSCHUL POTTS LLC

## EXHIBIT A

All accounts, proceeds and receivables of Borrower.

| Account | Deposit | Current | < 30 | 30 - 59 | 60 - 89 | 90+ | Total |
|---|---|---|---|---|---|---|---|
| ARTHUR J GALLAGHER & CO. | | | | | | $28,240.25 | $28,240.25 |
| ATI PHYSICAL THERAPY | $295.00 | $29,578.87 | $5,497.25 | $4,273.97 | $5,439.58 | $9,932.56 | $54,722.23 |
| CBRE Operations | ATT Account | | | | | | $1,299.00 | $1,299.00 |
| Century 21 Affiliated | | | | | | $200.00 | $200.00 |
| CIS DATA SERVICES, LLC | | $1,600.00 | | | | | $1,600.00 |
| COMMUNITY CONSOLIDATED SD46 | | | | | | $375.09 | $375.09 |
| DELI SOURCE, A DIVISION OF JLM MFG, LLC | | | | | | $5,775.00 | $5,775.00 |
| Eagle Foods (Verkada Leed) | | $2,100.00 | | | | | $2,100.00 |
| ELECTRO STANDARDS LABORATORIES | | $605.00 | | | | | $605.00 |
| HN PRECISION | | | | | | $585.00 | $585.00 |
| HOFFER PLASTICS CORPORATION | | | | $12,970.51 | | | $12,970.51 |
| KERRY INGREDIENTS & FLAVOURS | | | | | | $2,361.16 | $2,361.16 |
| KONICA MINOLTA BUS. SOLUTIONS U.S.A. INC | | $21,235.00 | | | | $1,936.25 | $23,171.25 |
| LAKE COUNTY FOREST PRESERVES | | | $2,117.50 | | | | $2,117.50 |
| L'OREAL USA PRODUCTS, INC. | | | $4,306.12 | $3,718.00 | | $8,333.22 | $16,357.34 |
| MERIDIAN GROUP | | $8,845.00 | | | | | $8,845.00 |
| MMSA TECH LLC | | | | | | $420.00 | $420.00 |
| MNJ TECHNOLOGIES, INC | | | | | | $455.00 | $455.00 |
| OCM INC/OKABE INC | | | $1,508.08 | | $45,557.65 | | $47,065.73 |
| PEPSICO INC | | $6,485.35 | | | | | $6,485.35 |
| ROUND LAKE AREA SCHOOLS DISTRICT 116 | | $621.00 | $16,008.01 | | | | $16,629.01 |
| SALON CENTRIC INC | $3,465.00 | $11,373.88 | | $2,033.00 | $1,446.86 | $10,869.82 | $25,723.56 |
| Selective Service Systems | | $11,877.59 | | $6,940.81 | | | $18,818.40 |
| SEMBLEX CORPORATION | | $1,560.10 | | | $618.75 | | $2,178.85 |
| SHERWIN WILLIAMS | | $11,694.93 | | | | $680.25 | $12,375.18 |
| SKF | | | | | | $400.00 | $400.00 |
| Sycamore Composition Construction | | | | $5,129.50 | | | $5,129.50 |
| TAICON | | | | | | $820.00 | $820.00 |
| TDK CORPORATION OF AMERICA | | | | $2,160.00 | | | $2,160.00 |
| TOTAL PLASTICS INC | | | | | | $1,049.52 | $1,049.52 |
| VERITAS MANAGED SOLUTIONS | | $2,097.50 | $24,626.47 | $6,902.78 | | | $33,626.75 |
| Voestalpine High Performance Metals Corp | | | $6,350.22 | | | | $6,350.22 |
| WAUKEGAN SCHOOL DISTRICT #60 | $9,935.68 | $5,605.25 | $22,421.00 | | | $10,228.00 | $38,254.25 |
| WOODLAND SCHOOL DISTRICT 50 | | $47,926.33 | $6,665.35 | $3,327.65 | | $455.00 | $58,374.33 |
| ZF SERVICES LLC | | | | | | $406.30 | $406.30 |
| Total | $13,695.68 | $163,205.80 | $89,500.00 | $47,456.22 | $53,062.84 | $84,821.42 | $438,046.28 |



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 9.00
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $
Postmark Here
Postage
$
Total Pos
$
Sent To
Street and
City, State,

Computer Power Systems, LLC
c/o Mark W. Allen, Reg. Agent
170 Commerce Drive
Grayslake, IL 60030

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 9.00
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $
Postmark Here
Postage
$
Total Postage and Fees
Sent To
Street and
City, State,

Denise Ann Campbell & Mark W. Allen
845 Maplewood Road
Lake Forest, IL 60045

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 9.00
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $
Postmark Here
Postage
$
Total
$
Sent
Street
City,

Akston CPA, LLC
c/o Harvard Business Services,
Reg. Agent
16193 Costal Hwy
Lewes, DE 19958

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 9.00
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $
Postmark Here
Postage
$
Total Postage and Fees
Sent To
Street and A
City, State,

Computer Power Systems, LLC
1355 Wilhelm Road
Mundelein, IL 60060

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

Exhibit K

**B**P | **B R O T S C H U L  P O T T S LLC**

**J. Ryan Potts**
*ryan@brotschulpotts.com*

April 10, 2024

Via FedEx Overnight & Email
Mark Allen
70 Stone Fence Rd.
Bernardsville, NJ 07924
mark.allen@4cps.com

Re:     $3,330,000 Loan (the "Loan") by CenTrust Bank, National Association
        ("Lender") in favor of Computer Power Systems, LLC ("CPS"), guaranteed by,
        *inter alia*, Mark Allen ("Guarantor").

Dear Mr. Allen:

**THIS IS AN ATTEMPT TO COLLECT A DEBT**.

As you are aware, my office has been retained by Lender to collect the Loan in full and; if necessary, pursue litigation and collection against all obligors of the Loan, including you, as Guarantor.  You have previously received formal notices of default which failed to promptly resolve the default to the reasonable satisfaction of Lender.

To date, Lender has endeavored to liquidate all CPS collateral and ancillary collateral to maximize the its recovery under the Loan.  Lender has come to the end of said liquidation. Unfortunately, the Loans have not been repaid in full and thus, pursuant to that certain February 23, 2017 Unconditional Guarantee executed by and between Guarantor and Lender ((the "Guaranty") attached hereto), Guarantor remains obligated for all unpaid amounts under the Loan.

Please be advised, after deduction of all amounts received by Lender in liquidating the collateral, as of April 1, 2024, **$1,396,071.58 remains unpaid with a daily accrual of $257.43**.

To avoid Lender exercising any additional remedies, Lender demands that you immediately contact it to repay the Loan in full or discuss a payment plan to resolve Guarantor's outstanding obligation to the Lender.

In an effort to avoid Guarantor's incurrence of additional costs, we hope for a swift resolution to this matter.  If you have any questions, please feel free to contact Mr. Gerard Buccino at Lender (gbuccino@centrustbank.com) (224.927.1212)) or J. Ryan Potts at Brotschul Potts LLC (ryan@brotschulpotts.com (312.551.9003)).  Please note, we are the only parties who should be contacted on behalf of Lender to discuss this matter.  This will be the last notice you will receive prior to Lender implementing its legal remedies as permitted under the Loan and Guaranty.

One Tower Lane, Suite 2060     Oakbrook Terrace, Illinois 60181     P: (312) 551-9003     F: (312) 277-3278     www.brotschulpotts.com

 P

CPS / Mark Allen
Page 2 of 2
April 10, 2024


     Interest, late charges, attorneys' fees, and other charges will continue to accrue until all obligations due and owing under the Loan are paid in full.  The Lender's acceptance of any monies less than the full amount shall not constitute a waiver of its rights and/or remedies under applicable law.

                         Very truly yours,
                         BROTSCHUL POTTS LLC

                         J. Ryan Potts


cc:     Gerard Buccino, gbuccino@centrustbank.com



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | 91853950-10 |
|---|---|
| SBA Loan Name | Computer Power Systems, LLC |
| Guarantor | Mark W. Allen, an individual |
| Borrower | Computer Power Systems, LLC, a Delaware limited liability company |
| Lender | CenTrust Bank, National Association |
| Date | 2-23 , 2017 |
| Note Amount | $3,330,000.00 |

1.   GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.   NOTE:

The "Note" is the promissory note dated _____2-23_____, 2017_____ in the principal amount of
_____Three Million Three Hundred Thirty Thousand and 00/100 ($3,330,000.00)_____ Dollars,
from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.   DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4.   LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.   Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.   Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.   Release any Borrower or any guarantor of the Note;

D.   Compromise or settle with the Borrower or any guarantor of the Note;

E.   Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.   Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.   Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.   Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.   FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.   RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.   Guarantor waives all rights to:
   1)   Require presentment, protest, or demand upon Borrower;
   2)   Redeem any Collateral before or after Lender disposes of it;
   3)   Have any disposition of Collateral advertised; and
   4)   Require a valuation of Collateral before or after Lender disposes of it.

B.   Guarantor waives any notice of:
   1)   Any default under the Note;
   2)   Presentment, dishonor, protest, or demand;
   3)   Execution of the Note;
   4)   Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5)   Any change in the financial condition or business operations of Borrower or any guarantor;
   6)   Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7)   The time or place of any sale or other disposition of Collateral.

C.   Guarantor waives defenses based upon any claim that:
   1)   Lender failed to obtain any guarantee;
   2)   Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3)   Lender or others improperly valued or inspected the Collateral;
   4)   The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5)   Lender impaired the Collateral;

6)   Lender did not dispose of any of the Collateral;

7)   Lender did not conduct a commercially reasonable sale;

8)   Lender did not obtain the fair market value of the Collateral;

9)   Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10)  The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11)  Lender made errors or omissions in Loan Documents or administration of the Loan;

12)  Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:

13)  Lender impaired Guarantor's suretyship rights;

14)  Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15)  Borrower has avoided liability on the Note; or

16)  Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7.   DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8.   SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9.   GENERAL PROVISIONS:

A.   ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.   SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C.   SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.   JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E.   DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.   FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G.   LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.   ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.   SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.   CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

None.

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.



MARK W. ALLEN, individually

# Transaction Record



| TRACKING NO.: | SHIP DATE: | ESTIMATED SHIPPING CHARGES: |
|---|---|---|
| 775912505994 | Apr 11, 2024 | 44.81 USD |

## From address

**Janet Vazquez**
Brotschul Potts LLC
1 Tower Lane
Suite 2060
60181 IL OAKBROOK TERRACE
US
Phone: 3125519003

## To address

**Mark Allen**
70 Stone Fence Rd.
07924 NJ BERNARDSVILLE
US
Phone: 3125519003

## Package information

| Pieces | Weight | Dimensions (LxWxH) | Carriage value | Package options |
|---|---|---|---|---|
| 1 x | 1.00 lb | | | n/a |

| Packaging type: | Service: | Pickup / drop-off type: |
|---|---|---|
| FedEx Envelope | FedEx Nacional 10:30 a.m. | I'll drop off my shipment at a FedEx location |

## Billing information

| Bill transportation cost to: | ******062 | P.O. No.: | |
|---|---|---|---|
| Bill duties, taxes and fees to: | | Invoice No.: | |
| Your reference: | Centrust - CPS | Department No.: | |

**Please note:** This transaction record is neither a statement nor an invoice, and does not confirm shipment tendered to FedEx or payment. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details. The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

Exhibit L

**BP** | **BROTSCHUL POTTS LLC**

**J. Ryan Potts**
*ryan@brotschulpotts.com*

April 10, 2024

<u>Via FedEx Overnight & Email</u>
Denise A. Campbell
70 Stone Fence Rd.
Bernardsville, NJ 07924
denise.campbell@comcast.net

    Re:    $3,330,000 Loan (the "<u>Loan</u>") by CenTrust Bank, National Association ("<u>Lender</u>") in favor of Computer Power Systems, LLC ("<u>CPS</u>"), guaranteed by, *inter alia*, Denise Campbell ("<u>Guarantor</u>").

Dear Ms. Campbell:

        **THIS IS AN ATTEMPT TO COLLECT A DEBT**.

    As you are aware, my office has been retained by Lender to collect the Loan in full and; if necessary, pursue litigation and collection against all obligors of the Loan, including you, as Guarantor. You have previously received formal notices of default which failed to promptly resolve the default to the reasonable satisfaction of Lender.

    To date, Lender has endeavored to liquidate all CPS collateral and ancillary collateral to maximize the its recovery under the Loan. Lender has come to the end of said liquidation. Unfortunately, the Loans have not been repaid in full and thus, pursuant to that certain February 23, 2017 Unconditional Guarantee executed by and between Guarantor and Lender ((the "<u>Guaranty</u>") attached hereto), Guarantor remains obligated for all unpaid amounts under the Loan.

    Please be advised, after deduction of all amounts received by Lender in liquidating the collateral, as of April 1, 2024, **$1,396,071.58 remains unpaid with a daily accrual of $257.43**.

    To avoid Lender exercising any additional remedies, Lender demands that you immediately contact it to repay the Loan in full or discuss a payment plan to resolve Guarantor's outstanding obligation to the Lender.

    In an effort to avoid Guarantor's incurrence of additional costs, we hope for a swift resolution to this matter. If you have any questions, please feel free to contact Mr. Gerard Buccino at Lender (gbuccino@centrustbank.com (224.927.1212)) or J. Ryan Potts at Brotschul Potts LLC (ryan@brotschulpotts.com (312.551.9003)). Please note, we are the only parties who should be contacted on behalf of Lender to discuss this matter. This will be the last notice you will receive prior to Lender implementing its legal remedies as permitted under the Loan and Guaranty.

 P

CPS / Denise Campbell
Page 2 of 2
April 10, 2024

Interest, late charges, attorneys' fees, and other charges will continue to accrue until all obligations due and owning under the Loan are paid in full. The Lender's acceptance of any monies less than the full amount shall not constitute a waiver of its rights and/or remedies under applicable law.

Very truly yours,
BROTSCHUL POTTS LLC

J. Ryan Potts

cc:      Gerard Buccino, gbuccino@centrustbank.com



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | 91853950-10 |
|---|---|
| SBA Loan Name | Computer Power Systems, LLC |
| Guarantor | Denise A. Campbell, an individual |
| Borrower | Computer Power Systems, LLC, a Delaware limited liability company |
| Lender | CenTrust Bank, National Association |
| Date | 2-23 , 2017 |
| Note Amount | $3,330,000.00 |

1. **GUARANTEE:**

   Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. **NOTE:**

   The "Note" is the promissory note dated _____2-23_____, 2017 _____ in the principal amount of _____Three Million Three Hundred Thirty Thousand and 00/100 ($3,330,000.00)_____ Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. **DEFINITIONS:**

   "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

   "Loan" means the loan evidenced by the Note.

   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

4.   LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.   Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.   Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.   Release any Borrower or any guarantor of the Note;

D.   Compromise or settle with the Borrower or any guarantor of the Note;

E.   Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.   Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.   Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.   Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.   FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.   RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.   Guarantor waives all rights to:
    1)   Require presentment, protest, or demand upon Borrower;
    2)   Redeem any Collateral before or after Lender disposes of it;
    3)   Have any disposition of Collateral advertised; and
    4)   Require a valuation of Collateral before or after Lender disposes of it.

B.   Guarantor waives any notice of:
    1)   Any default under the Note;
    2)   Presentment, dishonor, protest, or demand;
    3)   Execution of the Note;
    4)   Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
    5)   Any change in the financial condition or business operations of Borrower or any guarantor;
    6)   Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
    7)   The time or place of any sale or other disposition of Collateral.

C.   Guarantor waives defenses based upon any claim that:
    1)   Lender failed to obtain any guarantee;
    2)   Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
    3)   Lender or others improperly valued or inspected the Collateral;
    4)   The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;
6) Lender did not dispose of any of the Collateral;
7) Lender did not conduct a commercially reasonable sale;
8) Lender did not obtain the fair market value of the Collateral;
9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) Lender made errors or omissions in Loan Documents or administration of the Loan;
12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:
13) Lender impaired Guarantor's suretyship rights;
14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
15) Borrower has avoided liability on the Note;  or
16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7.   DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee.  Lender has no duty to preserve or dispose of any Collateral.

8.   SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9.   GENERAL PROVISIONS:

A.   ENFORCEMENT EXPENSES.  Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.   SBA NOT A CO-GUARANTOR.  Guarantor's liability will continue even if SBA pays Lender.  SBA is not a co-guarantor with Guarantor.  Guarantor has no right of contribution from SBA.

C.   SUBROGATION RIGHTS.  Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.   JOINT AND SEVERAL LIABILITY.  All individuals and entities signing as Guarantor are jointly and severally liable.

E.   DOCUMENT SIGNING.  Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.   FINANCIAL STATEMENTS.  Guarantor must give Lender financial statements as Lender requires.

G.   LENDER'S RIGHTS CUMULATIVE, NOT WAIVED.  Lender may exercise any of its rights separately or together, as many times as it chooses.  Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.   ORAL STATEMENTS NOT BINDING.  Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.   SEVERABILITY.  If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.   CONSIDERATION.  The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

None.

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

*Denise A. Campbell*
_____
DENISE A. CAMPBELL, individually

# Transaction Record



| TRACKING NO.: | SHIP DATE: | ESTIMATED SHIPPING CHARGES: |
|---|---|---|
| 775912552691 | Apr 11, 2024 | 44.81 USD |

## From address

**Janet Vazquez**
Brotschul Potts LLC
1 Tower Lane
Suite 2060
60181 IL OAKBROOK TERRACE
US
Phone: 3125519003

## To address

**Denise A. Campbell**
70 Stone Fence Rd.
07924 NJ BERNARDSVILLE
US
Phone: 3125519003

## Package information

| Pieces | Weight | Dimensions (LxWxH) | Carriage value | Package options |
|---|---|---|---|---|
| 1 x | 1.00 lb | | | n/a |

| Packaging type: | Service: | Pickup / drop-off type: |
|---|---|---|
| FedEx Envelope | FedEx Nacional 10:30 a.m. | I'll drop off my shipment at a FedEx location |

## Billing information

| | | | |
|---|---|---|---|
| Bill transportation cost to: | ******062 | P.O. No.: | |
| Bill duties, taxes and fees to: | | Invoice No.: | |
| Your reference: | Centrust - CPS | Department No.: | |

**Please note:** This transaction record is neither a statement nor an invoice, and does not confirm shipment tendered to FedEx or payment. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details. The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.